**In re James & Dollie Mae COLEMAN,
Debtor.**

**James & Dollie Mae COLEMAN,
Plaintiffs,**

**v.**

**HOME SAVINGS ASSOCIATION and
Imperial Interest, Defendants.**

Bankruptcy No. 81–01392–H1.
Adv. No. 81–0708–H1.

United States Bankruptcy Court,
S. D. Texas,
Houston Division.

July 15, 1982.

As Amended July 15, 1982.

Jim S. Adler, Houston, Tex., for plaintiffs.

John A. Coselli, Jr., Houston, Tex., for defendant Home Sav. Assoc.

Firmin A. Hickey, Jr., Houston, Tex., for defendant Imperial Interest.

EDWARD H. PATTON, Jr., Bankruptcy Judge.

The matters before the court are cross-motions for summary judgment in an adversary proceeding filed by the debtors seeking to avoid a foreclosure sale on their homestead as an alleged fraudulent conveyance. The summary judgment proof including affidavits filed by the parties together with the request for admissions as answered by the debtors establish the following facts:

1. On January 23, 1980 James and Dollie Coleman, debtors in this proceeding, executed a promissory note to Harris County Air Conditioning Corp. which was subsequently assigned to Home Savings Association, one of the defendants in this proceeding.

2. This promissory note was secured by a second lien on the debtors' homestead.

3. The property in question is also encumbered by a first lien note payable to Lomas and Nettleton Co. in the amount of $14,000.

4. The debtors defaulted on the note held by Home Savings Association precipitating the exercise by Home Savings Association of its right to accelerate and foreclose.

5. On February 3, 1981 the property was sold at foreclosure to Home Savings Association for $5,700.

6. At the time of foreclosure the amount due and owing on the second lien note held by Home Savings Association was $5,700.

7. On February 23, 1981 Home Savings Association conveyed the property to Imperial Interest, the other defendant in this proceeding, for $5,700.

8. On May 1, 1981 the Colemans filed a voluntary petition in bankruptcy seeking relief pursuant to Chapter 13 of the Bankruptcy Code.

9. On May 22, 1981 Imperial Interest filed a complaint to modify the stay so that they might proceed with state court remedies available to them in gaining possession of the property in question.

10. On June 23, 1981, no answer or request for hearing having been filed by the debtors, the automatic stay terminated as a matter of law pursuant to 11 U.S.C. § 362(d).

11. On July 9, 1981 Imperial Interest instituted state court action to gain possession of the debtors' residence and subsequently did dispossess the debtors of their home.

12. The property in question is valued at not less than $40,000.

13. The debtors are personally liable on the first lien note to Lomas and Nettleton Company.

The present action was brought by the debtors on August 14, 1981. In the first amended complaint the debtors seek to (1) avoid the foreclosure sale and subsequent transfer to Imperial Interest as a fraudulent conveyance pursuant to 11 U.S.C. § 548 or as a preferential transfer pursuant to 11 U.S.C. § 547, (2) require Imperial Interest to convey title to the property back to the debtors, (3) alternatively recover damages in an amount in excess of $30,000 in the event defendants have converted or disposed of the property and (4) recover damages in an amount in excess of $5,000 against Imperial Interest as restitution for dispossession of their home and certain personal property items the Sheriff levied to cover Imperial Interest's costs in the forcible entry and detainer action. At the pretrial of the present case held on February 22, 1982 all parties agreed to submit on motions for summary judgment the limited issues pertaining to 11 U.S.C. § 548.

The debtors' motion for summary judgment simply alleges that no issues of material fact remain and they are entitled to judgment as a matter of law. The governing language in § 548(a)(2) is as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property . . .

that was made ... within one year before the date of the filing of the petition, if the debtor ...

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer...."

Thus in order to avoid the transfer the debtors have a two-prong burden of proof. They must show that the value received was "less than a reasonably equivalent value" and that they were insolvent or were made insolvent by the transfer in question.

The bankruptcy code sets forth no method to be used in determining what is or is not reasonably equivalent value. The provisions of § 548(a)(2) are almost identical to the provisions contained in § 67(d)(2) of the former Bankruptcy Act. The language of § 67(d)(2) stated that a transfer was fraudulent if made "without fair consideration by a debtor who is or will be thereby rendered insolvent." A case decided under the act on facts very similar to the present case is *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir. 1980). In *Durrett* property valued at $200,000 was sold to the only bidder at a deed of trust foreclosure sale for $115,400 which was the exact amount necessary to liquidate the indebtedness secured by the deed of trust. The Fifth Circuit held that since the amount paid was only 57.7% of the value of the property it was not fair consideration. In making this holding the court in *Durrett* noted that it had been unable to locate any decision dealing with a transfer of real property under attack pursuant to § 67(d) of the Bankruptcy Act which had approved the transfer for less than 70% of the market value of the property. *Durrett* was followed by a second Act case, *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547 (5th Cir. 1981). This reasoning has been adopted and followed by at least one case interpreting § 548(a)(2) of the Bankruptcy Code. *In re Madrid*, 10 B.R. 795 (Bkrtcy, Nevada 1981). In *Madrid* the sole bidder at the foreclosure sale paid 64% to 67% of the market value of the property. The court followed *Durrett* in rescinding the nonjudicial foreclosure sale stating that "[i]t is apparent that the Courts have established a firm 70% guideline because the greater the market value of a piece of property the more equity that can be cut off by the variation of a few percentage points."

▪ In the present case the debtors' property is encumbered with two liens of $14,000 and $5,700 respectively. Therefore the debtors' equity in the property in question is $20,300. Home Savings Association purchased the property at the foreclosure sale for $5,700 or the exact amount due on the second lien note. This resulted in Home Savings Association purchasing the debtors' equity for slightly more than 28% of the market value of said equity. This amount is considerably below the 70% benchmark set by *Durrett*. This court has no alternative other than to find that the amount paid by Home Savings is less than reasonably equivalent value within the meaning of 11 U.S.C. § 548(a)(2). However, the court will state at this time that the holding of *Durrett* and cases following thereafter cast a cloud upon mortgages and trust deeds. The dissent of Judge Clark in *Abramson, supra*, correctly points out that generally foreclosure sales "do not bring the best price, but most states, including Texas, mandate public sales when foreclosure is the creditor's remedy." If this court were free to do so it would follow Judge Clark's dissent.

▪ The second prong of the debtors' burden of proof requires a showing that they were insolvent at the time of the foreclosure sale or were rendered insolvent thereby. The word insolvent is defined in 11 U.S.C. § 101(26) as meaning a:

... financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of...

(ii) property that may be exempted from property of the estate under § 522 of this title.

The debtors in the instant case have admitted that their financial condition, i.e., debts,

assets, etc. on the day of foreclosure are adequately represented in their amended schedule and plan of arrangement on file in their main bankruptcy proceeding. The debtors listed assets are as follows:

|  |  | Value |
|---|---|---|
| Real property (homestead) |  | $40,000 |
| Automobiles |  | 800 |
| Furnishings |  | 1,000 |
| Clothing |  | 500 |
| Savings Account |  | 200 |
|  | Total | $42,500 |

The debtors listed debts are as follows:

| Lomas & Nettleton Company | $14,000 |
|---|---|
| Home Savings Assoc. | 5,700 [1] |

Both of the listed debts are secured by liens on the homestead as heretofore discussed. All of the assets are scheduled as exempt. Pursuant to the provisions of § 101(26) the exempt property must be excluded when applying the balance sheet test for insolvency. Prior to the foreclosure the debtors had no nonexempt assets and no outstanding debts which were not totally secured by exempt property. However, after the foreclosure sale the debtors remained personally liable to Lomas & Nettleton Company on the $14,000 debt and they no longer had title to the property which was pledged to secure payment of this debt. Therefore, there is a showing that the debtors were rendered insolvent by the transfer in question.

It is apparent that the debtors have met their burden of proof necessary to show that the foreclosure of the second lien on their residence conducted on February 3, 1981 by Home Savings Association was a fraudulent conveyance within the meaning of 11 U.S.C. § 548(a)(2) as interpreted by the Fifth Circuit in *Durrett, supra.* We must now consider the defenses raised by both Home Savings Association and Imperial Interest.

■ Both defendants assert that § 548 was included in the Code to benefit creditors and that the Colemans as debtors have no standing to bring an action under § 548. It is true that the language of § 548 states that the trustee may avoid transfers deemed fraudulent within that section. Debtors under Chapter 13 are not given the rights of the trustee as are debtors in possession under Chapter 11. 11 U.S.C. § 1303; *but see* 11 U.S.C. § 1107. However, § 522(h) pertaining to exemptions gives the debtor the right to avoid a transfer to the extent that the debtor could have exempted the property which was the subject of the transfer if such transfer is avoidable under §§ 544, 545, 547, 548, 549 or 724(a) and the trustee does not attempt to avoid such transfer. In the present case the debtors are entitled to exempt their residence pursuant to § 522 and the Texas state law concerning exemptions. There is no evidence that the Chapter 13 trustee has in any way attempted to pursue a cause of action to avoid the transfer in question. Therefore, the court finds that the debtor does have standing to seek avoidance of the transfer under § 548.

■ The defendants also raise the defense of res judicata alleging that this cause of action should have been urged as a counterclaim to the action filed by Imperial Interest to terminate the automatic stay. Suits brought pursuant to § 362 are unique in that subsection (e) provides that within 30 days of the date the creditor requests relief the court must conduct a preliminary hearing. If the stay survives the preliminary hearing a final hearing on the termination or modification of the stay must be commenced within 30 days after such preliminary hearing. Rule 4001 of the Interim Bankruptcy Rules, which has been adopted by this court as a local rule, provides that the stay expires within 30 days after the final hearing is commenced unless the court determines that the stay be continued. *In re Born,* 7 B.C.D. 313, 10 B.R. 43 (Bkrtcy. S.D.Tex.1981) this court was faced with a complaint to modify the stay in which two counterclaims were filed. At that time we

---

**1.** The scheduled amount of this note is $5,500 but the admissions of the debtor establish this debt to be $5,700.

expressed the view that the time constraints placed on the court when considering an action brought under § 362(d) made it very difficult to consider counterclaims which might arise in the § 362(d) action. Rather we deemed it necessary to sever out any counterclaims or affirmative defenses that might arise. To do otherwise would deprive the secured creditor of the right of adequate protection while the proceedings were pending. Further an action pursuant to § 362(d) does not raise the issue of fraudulent transfer in and of itself. An action to avoid a fraudulent transfer is simply not a proper issue in a § 362 complaint. For these reasons this court is not willing to consider res judicata as a defense to the present suit.

■ This determination brings us to the problem of what relief the debtors are entitled to at the present time. In their pleading the debtors have requested that Imperial Interest be ordered to transfer the property in question back to the debtors. This remedy arises from 11 U.S.C. § 550 which provides in pertinent part:

> (a) ... to the extent that a transfer is avoided under section ... 548 ..., the trustee [2] may recover, ... the property transferred, or if the court so orders, the value of such property from—
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

Imperial Interest maintains that they are protected pursuant to § 550(b) which provides protection for certain transferees as follows:

> (b) The trustee may not recover under section (a)(2) of this section from—
>> (1) a transferee that takes for value ..., in good faith, and without knowledge of the voidability of the transfer avoided; or
>> (2) any immediate or mediate good faith transferee of such transferee.

The initial transferee from the debtor is protected only if he takes in good faith for value without knowledge of the voidability of the transfer avoided. Any subsequent transferee of a transferee meeting this standard is protected if he took the property in good faith. In other words, once a transferee of the debtor's initial transferee meets the requirements of (b)(1) (value, good faith and no knowledge of the transfer's voidability), then any subsequent transferee need only show good faith. 4 Collier On Bankruptcy ¶ 550.03 (15th ed. 1981). Note that the value required for this section does not need to be reasonably equivalent value. The phrase "good faith" in this paragraph is not defined in any way. The language of the sections comes from § 4–609(b)(1) of the Commission's Report which was filed with Congress in 1973. The notes accompanying that report state that good faith is a familiar phrase and it was felt that it was best to leave this interpretation to the courts on a case-by-case construction. Good faith has been defined as solely a question of whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors. 4 Collier On Bankruptcy ¶ 550.03 at 550–8 n.3 (15th ed. 1981). Texas case law has long held that a party paying a grossly inadequate price cannot be considered a good faith purchaser for value. *Phillips v. Latham*, 523 S.W.2d 19, 24 (Tex. Civ.App.—Dallas 1975, ref. n. r. e.).

In the event that the debtors in this case cannot recover the property from Imperial Interest then the court may grant them a judgment for damages against Home Savings Association equal to the value of the transferred property pursuant to § 550(a)(1). The record lacks any clear evidence of the particular events surrounding the sale of the property by Home Savings Association to Imperial Interest. The court has no way to determine how Imperial Interest became aware of the property in question or whether they should be charged

**2.** 11 U.S.C. § 522(i) gives the debtor this right of recovery.

with constructive knowledge of the voidability of Home Savings Association's title in the property. It is for this reason that the court at this time grants partial summary judgment for the debtors finding the foreclosure sale to be a fraudulent transfer within the purview of 11 U.S.C. § 548(a)(2). However, judgment as to turnover of the property or liability to the debtors for damages will be reserved and decided at a latter date after this case has been put to trial and further evidence has been presented to the court.

An order consistent with this opinion will be entered on this date.