In re Norma E. WORCESTER, Debtor.

Irving ROSNER and William Little, Plaintiffs,

v.

Norma E. WORCESTER, Elsie Davis, Chapter 13 Trustee, Defendants.

Norma E. WORCESTER, Counter-Claimant,

v.

Irving ROSNER, William Little, National Security Mortgage Co., Sam Spivack, Charles E. Moon, Joseph H. Sosler, L.M. Kitzman, Clark Keen, Trust Deed Diversified Services, Cheryl Lewis, Patricia Mayden, Counter-Defendants.

Bankruptcy No. LA 82–04088–JD. Adv. No. 82–2635–JD.

United States Bankruptcy Court, C.D. California.

April 8, 1983.

Salvatore A. Sciortino, Slate & Leoni, Los Angeles, Cal., for debtor.

Joel Mithers, Los Angeles, Cal., for plaintiff, William Little.

Alfred Fadel, Los Angeles, Cal., for plaintiff, Irving Rosner.

Saul S. Kreshek, Los Angeles, Cal., for cross-defendants.

JAMES R. DOOLEY, Bankruptcy Judge.

The basic question addressed in this Opinion is whether a nonjudicial foreclosure sale may be set aside, under 11 U.S.C. § 548 or under other provisions of law, where the foreclosure sale price of the property was greatly below its fair market value and where both the Notice of Sale and the Trustee's Deed described two parcels of property while only one parcel was encompassed in the beneficiaries' lien. Additional questions concerning the liability of the counter-defendants will be discussed in a supplemental Opinion.

## FACTS

On or about November 7, 1977 the debtor, Norma E. Worcester (hereinafter "Worcester") obtained a three-year, interest only loan arranged by counter-defendant National Security Mortgage Co.[1] The loan was evidenced by a note dated October 6, 1977 in the amount of $11,000 payable to L.M. Kitzman and Selma R. Kitzman ("Kitzman note" or as individuals "the Kitzmans"). The Kitzman note was secured by a deed of trust on real property located at 23340 Zuniga Road, Topanga, California of which the Kitzmans were beneficiaries ("Kitzman deed of trust"); and this deed of trust, which was recorded on November 7, 1977, contained the following legal description:

"That portion of the Southeast quarter of the Northwest quarter of Section 2, Township 1 South, Range 17 West, San Bernardino Meridian, according to the Official Plat of said land filed in the District Land Office, August 31, 1896, described as follows: Beginning at a point in the East line of said Southeast quarter of the Northwest quarter of said Section, distant North 1139.23 feet from the center of said Section; thence South 83° 36' West 454.07 feet; thence South 82° 22' West 349.12 feet; thence North 55° 53' West 90.35 feet; thence North 73° 01' West 214.65 feet; thence South 73° 27' West 159.17 feet; thence South

---

1. The answer and counterclaim as initially filed by Worcester refers to the National Security Mortgage Co. and others as "cross-defendants". However, since none of the persons or entities so designated were originally named as defendants by plaintiffs, the use of the designation "cross-defendants" would seem to be incorrect. They should properly be referred to as "counterclaim defendants" or "counter-defendants". See Rule 13 of the Federal Rules of Civil Procedure, as incorporated into Bankruptcy Rule 713; see also *Vermont Castings, Inc. v. Evans Products Co.*, 510 F.Supp. 940, 941 (D.C. Vt.1981) 3 Moore's Federal Practice ¶ 13.02. The caption of this of Opinion has been modified accordingly.

76° 36′ West to the West line of the Southeast quarter of the Northwest quarter of said Section 2; thence North along said West line to the Southwest corner of Lot 3 of said Section 2; thence east along the South line of said Lot 3 to the Southeast corner thereof; thence South along the East line of the Southeast quarter of the Northwest quarter of said Section 2, to the point of beginning.

EXCEPTING from said land those portions thereof described in deeds conveying easements for Topanga Canyon Road to County of Los Angeles, as per map recorded in Book 6647 Page 107 and in Book 7873 Page 321, Official Records."

Worcester defaulted in the payment of the Kitzman note, which became all due and payable on or about November 25, 1980; and foreclosure proceedings were commenced on behalf of the Kitzmans. A Notice of Default and Election to Sell was recorded on March 17, 1981 and again on April 27, 1981; and a Notice of Trustee's Sale was recorded on December 24, 1981 and thereafter published.[2] However, the description of the property in the Notice of Trustee's Sale, both as recorded and as published, included a description of the following parcel of property which was not a part of the Kitzman deed of trust:

"PARCEL 2:

The Southwest corner of the Northwest quarter of Section 2, Township One South, Range 17 West, San Bernardino Meridian, according to the Official Plat of the survey of said land on file in the Bureau of Land Management.

EXCEPT therefrom one-half of all oil rights, as reserved by Ida Mabel McClain in deed recorded May 21, 1947 in Book 24548 Page 440, Official Records.

AND EXCEPTING therefrom a 25 percent royalty of and the rights to all oil, gas or other hydrocarbons or the proceeds thereof, which may be produced from said premises, as said 25 percent royalty

interest is reserved in deed recorded October 2, 1951 as Instrument No. 19523, in Book 37329 Page 145, of Official Records, such reservation being in favor of Teresa Pasquaro."

A trustee's sale was held on February 5, 1982 at which counter-defendant Irving Rosner (hereinafter "Rosner") purchased the property for $14,975. The Trustee's Deed which was issued to Rosner and recorded on February 5, 1982 contained the same legal description of the property as had been set forth in the Notice of Trustee's Sale, that is, two parcels of property were described rather than the one parcel described in the Kitzman deed of trust.

Thereafter, by Grant Deed recorded on February 22, 1982, Rosner, together with his wife Sylvia, transferred the property which had been acquired by virtue of the aforementioned Trustee's Deed to counter-defendant William Little (hereinafter "Little"). The evidence indicates that the transfer to Little was made pursuant to a typewritten Agreement For Sale Of Real Property executed on February 22, 1982 which provided, *inter alia,* that the sale price was "$130,000 payable $30,000 cash down, and sellers to carry back a purchase money note and trust deed for $100,000...". No escrow was used for the transfer. Little gave Rosner a cashier's check dated February 22, 1982 for $30,000, a Note Secured By Deed of Trust dated February 19, 1982 for $100,000, and a Deed of Trust and Assignment of Rents recorded on February 22, 1982. Except for the $30,000 cashier's check, no other cash payments have been made by Little to Rosner.

The Grant Deed from Rosner to Little and the Trust Deed from Little to Rosner contained the same legal description of the property as had been set forth in the Notice of Trustee's Sale and in the Trustee's Deed referred to above. All four of these instruments described two parcels of property

2. Worcester sought to enjoin foreclosure proceedings by an action commenced in the Los Angeles County Superior Court on June 29, 1981, Action No. C 372817. However, on November 30, 1981 the Superior Court declined to issue a preliminary injunction against foreclosure and dissolved the temporary restraining order which it had previously issued. A Notice of lis pendens was not recorded in connection with Action No. C 372817.

rather than the one parcel of property described in the Kitzman Deed of Trust. Attached to this Opinion as Appendix A is the legal description of the property as set out in all four instruments.

Parcel 1 on Appendix A is the property described in the Kitzman deed of trust. It consists of approximately four acres on which the residence of Worcester is located. Although the evidence is conflicting, the court finds that this parcel had a fair market value at the time of the trustee's sale on February 5, 1982 of approximately $240,-000.[3] Encumbrances against the property at that time totaled in the neighborhood of $60,000.

Parcel 2 on Appendix A describes a 40-acre parcel of land owned by Worcester except that the third word of the legal description on Appendix A is "corner" whereas the third word on the true description of the 40-acres is "quarter". The debtor's Chapter 13 Statement showed this parcel to have a value of $20,000 per acre, for a total of $800,000. Testimony at trial indicated that this 40-acre parcel was worth in excess of one million dollars, although no appraisal had been made. No explanation was given at trial as to why parcel 2 was included in the property to be sold at foreclosure.[4]

On February 12, 1982 Rosner commenced an unlawful detainer action against Worcester in the Los Angeles County Municipal Court. Worcester filed an answer in the unlawful detainer action on February 23, 1982; however, on March 12, 1982 Worcester filed her Chapter 13 petition, thereby staying the unlawful detainer action. See 11 U.S.C. § 362(a).

**3.** Both Rosner and Little expressed the opinion that this parcel had a fair market value during February 1982 of $150,000. Worcester, on the other hand, testified that parcel 1 had a fair market value at the time of the trustee's sale of $250,000. An appraiser testifying for Worcester, who was the only appraiser testifying at trial, fixed the fair market value of this parcel at $240,000.

**4.** On May 19, 1982 Worcester filed in this action a "Motion For Judgment On The Pleadings As To Title To Defendant's Forty (40) Acre

On March 23, 1982 Rosner and Little filed in this court a Complaint To Vacate Automatic Stay. On April 14, 1982 Worcester filed an "Answer To Complaint To Vacate Automatic Stay, Counter-Claim To Set Aside Trustee's Sale Under Bankruptcy Code Sections 548, 544, 547 and 522(h) To Determine The Validity Priority Or Extent Of A Lien Or Other Interest In Property Under Bankruptcy Rule 13–701(a)(2) And (3) And For Damages."

### LEGAL ANALYSIS

11 U.S.C. § 548 provides in part as follows:

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;"

A determination as to whether the trustee's sale of February 5, 1982 may be set aside under the above-quoted statute requires a resolution of the following subsidiary issues:

1. Whether the trustee's sale of February 5, 1982 effected a "transfer of an interest of the debtor in property" within the meaning of 11 U.S.C. § 548(a)?

Parcel". In their responses to the motion, both Rosner and Little disclaimed any interest in the 40-acre parcel; and on June 3, 1982 this court filed its "Order Granting Motion For Judgment As To Title To Defendant's Forty (40) Acre Parcel". The order provided in substance that the Trustee's Deed to Rosner, the Grant Deed from Rosner to Little, and the Deed of Trust from Little to Rosner "are NULL AND VOID and of no force and effect" as to the 40-acre parcel and that title to said 40-acre parcel is "declared vested in NORMA WORCESTER".

2. Whether the transfer of the debtor's equity in the property was for less than a "reasonably equivalent value" within the meaning of 11 U.S.C. § 548(a)(2)(A)?

3. Whether the debtor became insolvent by virtue of the transfer effected by the trustee's sale within the meaning of 11 U.S.C. § 548(a)(2)(B)(i)?

For the reasons which follow, this court answers the first two questions in the affirmative and the last question in the negative. Therefore, this court concludes that the trustee's sale of February 5, 1982 may not be set aside pursuant to 11 U.S.C. § 548. However, this court further concludes that the trustee's sale of February 5, 1982 is voidable under California's foreclosure law and therefore should be set aside in this action.

### Transfer

■ 11 U.S.C. § 101(40) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or with an interest in property, including retention of title as a security interest". Although the authorities are in conflict, this court is of the view that the quoted definition is sufficiently broad to include the disposition of the debtor's equity in property at a nonjudicial foreclosure sale. Cf. *Abramson v. Lakewood Bank and Trust Co.,* 647 F.2d 547, 548–549 (5th Cir.1981); *Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 204 (5th Cir.1980); contra: *In Re Alsop,* 22 B.R. 1017 (D.C.Alaska 1982), affirming *In Re Alsop,* 14 B.R. 982 (Bkrtcy. Alaska 1981). As Judge Volinn, dissenting in *In Re Madrid,* 21 B.R. 424 (Bkrtcy.App., 9th Cir.1982), declared (pp. 427–428) [5]:

" ... While there may be some initial confusion as to whether the original transfer, by way of security, or the subsequent transfer at a forced sale is the transfer which should be considered under § 548, it is clear that it is the second transfer which actually divested the debt-or of all interest in the property. To the extent that there may be a question as to whether or not the transfer was forced or voluntary, the Code definition of 'transfer' includes involuntary transfer. 11 U.S.C. § 101(40). The scope of this definition is at least as broad as its Act predecessor, 11 U.S.C. § 1(30) which was in effect when Durrett was decided. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977), p. 314, U.S.Code Cong. & Admin. News 1978, p. 5787. Thus, § 548, which states that a 'trustee may avoid any transfer of an interest of the debtor' affects foreclosure sales which, albeit consented to, are in a real sense forced or involuntary."

### Reasonably Equivalent Value

This court has found, based upon the testimony of the only appraiser who testified at the trial, that the property encompassed in the Kitzman deed of trust had a fair market value at the time of the trustee's sale of approximately $240,000 and that total encumbrances against the property at that time were in the neighborhood of $60,000. Based upon these findings, the debtor had an equity in the property at the time of the trustee's sale of approximately $180,000. Since Rosner paid only $14,975 for the property at the trustee's sale, he purchased the debtor's equity for less than 8.5% of its market value. Even if it be assumed, arguendo, that the fair market value of the property was only $150,000, as testified to by Rosner and Little, the debtor would have had an equity in the property of approximately $90,000; and Rosner would have paid less than 17% of the fair market value of this equity. Therefore, if price may be considered, the debtor received considerably less than reasonably equivalent value in exchange for the transfer. Cf. *In Re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Tex. 1982).

However, in *In Re Madrid, supra,* 21 B.R. 424, the Ninth Circuit Appellate Panel held

---

**5.** The majority in *Madrid* declined to decide the issue of whether a non-judicial foreclosure sale effected a transfer. See 21 B.R. at page 426.

An appeal in *Madrid* is pending before the United States Court of Appeals for the Ninth Circuit.

that the consideration received at a non-collusive, regularly conducted public sale satisfies the "reasonably equivalent value" requirement of 11 U.S.C. § 548(a)(2). The majority in *Madrid* apparently took the position that unless a nonjudicial foreclosure sale can be set aside under appropriate foreclosure law, it cannot be set aside under 11 U.S.C. § 548; that in the context of foreclosure law mere inadequacy of price will not upset a foreclosure sale; and that there must be, in addition, proof of "some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price", citing *Oller v. Sonoma County Land Title Co.* (1955), 137 Cal.App.2d 633, 290 P.2d 880. To the same effect: *Central National Bank v. Bell* (1936), 5 Cal.2d 324, 328, 54 P.2d 1107; *Sargent v. Shumaker* (1924), 193 Cal. 122, 131, 223 P. 464; *Crofoot v. Tarman* (1957), 147 Cal.App.2d 443, 446, 305 P.2d 56; 27 Cal.Jur.3d Deeds of Trust § 282.

This court is of the view that because of the gross misdescription of the property both in the Notice of Trustee's Sale and in the Trustee's Deed, the trustee's sale of February 5, 1982 was not a regularly conducted sale; and that this misdescription of the property, coupled with the gross inadequacy of price, is enough to set aside the sale under California's foreclosure law.

In *Crist v. House of Osmonson, Inc.,* 7 Cal.2d 556, 61 P.2d 758 (1936) the California Supreme Court, while refusing to set aside the trustee's sale in that case because of a misdescription of the property, referred to with apparent approval but distinguished *Fenner v. Tucker,* 6 R.I. 551 and *Peoples' Sav. Bank of Woonsocket v. Wunderlich,* 178 Mass. 453, 59 N.E. 1040, where sales had been set aside because the property had been misdescribed. After reviewing the authorities the Supreme Court said (7 Cal.2d page 559, 61 P.2d 758):

> "The rule is therefore sufficiently well settled that in the absence of any evidence that actual prejudice was suffered

the misdescription by the inclusion of property theretofore released must be of such a substantial nature that prejudice is likely to result to the trustors."

In the present case actual prejudice was suffered by Worcester, and it may be inferred that the grossly inadequate price paid by Rosner was a result of the gross misdescription of the property. At least the misdescription of the property was of such a substantial nature that prejudice was likely to result to Worcester. A person seeking to purchase only a single family residence would likely have been dissuaded from attending the trustee's sale if he had concluded from the description contained in parcel 2 that the 40 acres owned by Worcester was also being sold.

### Insolvency

The trustee's sale of February 5, 1982 deprived Worcester of the 4-acre parcel on which her residence was situated and at least created a cloud on her title to the 40-acre parcel worth $800,000. Assuming, but not deciding, that the latter 40-acre parcel may not be considered an asset of Worcester for the purpose of determining whether she was rendered insolvent by the trustee's sale, the court is nevertheless unable to find that she became insolvent as a result of that sale under the definition of insolvent contained in 11 U.S.C. § 101(26).[6] The latter statute defines "insolvent" to mean:

> "(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
>> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>>
>> (ii) property that may be exempted from property of the estate under section 522 of this title;"

---

**6.** This is the definition which courts have used in determining insolvency under 11 U.S.C. § 548(a)(2)(B)(i). *In Re Coleman,* 21 B.R. 832, 834–835 (Bkrtcy.S.D.Tex.1982); *In Re Smith,* 21 B.R. 345, 350 (Bkrtcy.M.D.Fla.1982).

In addition to the 40-acre parcel referred to above, Worcester owned another 40-acre parcel which she testified was worth $150,000 and was subject to encumbrances of about $11,000. In addition, Worcester testified that she owned a cabin site worth $75,000 that was only encumbered by an assessment for water bonds. In her schedules Worcester listed unsecured debts of less than $15,000, although the amounts owed to several creditors was listed as unknown and would undoubtedly add to that total.

It is true that Worcester had few liquid assets. Indeed, her schedules indicate that the total value of all of her nonexempt personal property totaled only about $3,000. However, considering the substantial equity that Worcester continued to own in real property, it has not been established that she became insolvent as a result of the trustee's sale.

### The Trustee's Sale Should Be Set Aside Under California's Foreclosure Law

■ As discussed above, the gross misdescription of the property coupled with the gross inadequacy of price is sufficient to set aside the trustee's sale under California's foreclosure law. When Worcester's bankruptcy petition was filed, her cause of action to set aside the trustee's sale became a part of her bankruptcy estate. 11 U.S.C. § 541(a)(1); 4 Collier on Bankruptcy, 15th Ed., ¶ 541.10[1]; Cf. *Matter of Smith,* 640 F.2d 888, 890 (7th Cir.1981), footnote 12; *Riggs v. Government Employees Finance Corp.,* 623 F.2d 68, 72–73 (9th Cir.1980). Worcester should be able to assert this cause of action, at least to the extent that the trustee has failed to do so. Cf. 11 U.S.C. § 522(h); *In Re Coleman, supra,* 21 B.R. 832, 835.

This court concludes that the trustee's sale should be set aside as to both Rosner, the purchaser at the sale, and Little, his transferee. Both Rosner and Little had actual and/or constructive notice that the Notice of Trustee's Sale, the Trustee's Deed, the Grant Deed from Rosner to Little, and the deed of trust from Little to Rosner all contained a description of a parcel of property that was not encompassed by the Kitzman deed of trust, and they both had actual and/or constructive notice that the purchase price at the trustee's sale was only $14,975. Sections 1213 and 2952 of the California Civil Code [7]; *Sieger v. Standard Oil Co.* (1957), 155 Cal.App.2d 649, 656–657, 318 P.2d 479. Under these circumstances [8] neither Rosner nor Little may be deemed a bona fide purchaser for value (*Sieger v. Standard Oil Co., supra,* at page 656, 318 P.2d 479); nor may either be deemed a "transferee that takes for value ... in good faith ... without knowledge of the voidability of the transfer avoided". Cf. 11 U.S.C. § 550(b).[9] Both Rosner and Little had actual and/or constructive notice of the voidability of the transfer.

Although the circumstances are suspicious, the evidence was insufficient to establish that Rosner and Little acted in bad faith or collusively. Therefore, Little is entitled to a lien on the 4-acre parcel to the extent of actual value paid. Cf. *In Re Jones,* 20 B.R. 988, 995–996 (Bkrtcy.E.D.Pa. 1982); *Matter of Laughlin,* 18 B.R. 778, 781 (Bkrtcy.W.D.Mo.1982). A judgment should

---

**7.** Section 1213 of the California Civil Code provides in part:

"Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees; ..."

**8.** Since this action to set aside the trustee's sale is equitable in nature, it is not irrelevant to note that both Rosner and Little are in the business of buying and selling properties and that most of the properties which they buy are obtained at foreclosure sales. Rosner has been in this business for about thirty years and Little for about ten years; and Rosner and Little have known each other for about five or six years. Worcester, although she had been a schoolteacher for many years and had worked toward a doctorate degree, was almost 76 years of age at the time of trial, having been born in November, 1906.

**9.** Although 11 U.S.C. § 550 is not here controlling, this court is considering its guidelines in fixing the equitable remedy in this case.

therefore be entered which provides *inter alia* for:

1. Setting aside the trustee's sale of February 5, 1982 and the Trustee's Deed issued and recorded on February 5, 1982;

2. Setting aside the Grant Deed from Rosner to Little recorded on February 22, 1982 and the deed of trust from Little to Rosner recorded on the same date;

3. Ordering that Little shall have a lien on the 4-acre parcel for $30,000, the amount that he actually paid to Rosner on February 22, 1982, plus interest;

4. Ordering that Rosner pay to the Chapter 13 trustee the difference between $30,000, the amount paid to him by Little, and $14,975, the amount which he paid at the trustee's sale, or $15,025, plus interest;

5. Ordering that Worcester satisfy Little's claim of $30,000 plus interest in full on or before September 1, 1983, either through the sale of the 4-acre parcel, the sale of other property owned by Worcester, or otherwise.

## APPENDIX A

PARCEL 1:

That portion of the Southeast quarter of the Northwest quarter of Section 2, Township 1 South, Range 17 West, San Bernardino Meridian, according to the Official Plat of the Survey of said land, filed in the district land office, August 31, 1896, described as follows:

Beginning at a point in the East line of said Southeast quarter of the Northwest quarter of said Section, distant North 1139.23 feet from the center of said Section; thence South 83° 36' West 454.07 feet; thence South 82° 22' West 349.12 feet; thence North 55° 53' West 90.35 feet; thence North 73° 01' West 214.65 feet; thence South 73° 27' West 159.17 feet; thence South 76° 36' West to the West line of the Southeast quarter of the Northwest quarter of said Section 2; thence North along said West line to the Southwest corner of Lot 3 of said Section 2; thence East along the South line of said Lot 3 to the Southeast

corner thereof; thence South along the East line of the Southeast quarter of the Northwest quarter of said Section 2, to the point of beginning.

EXCEPTING from said land those portions thereof described in deeds conveying easements for Topanga Canyon Road.

PARCEL 2:

The Southwest corner of the Northwest quarter of Section 2, Township One South, Range 17 West, San Bernardino Meridian, according to the Official Plat of the survey of said land on file in the Bureau of Land Management.

EXCEPT therefrom one-half of all oil rights, as reserved by Ida Mabel McClain in deed recorded May 21, 1947 in Book 24548 Page 440, Official Records.

AND EXCEPTING therefrom a 25 percent royalty of and the rights to all oil, gas or other hydrocarbons or the proceeds thereof, which may be produced from said premises, as said 25 percent royalty interest is reserved in deed recorded October 2, 1951 as Instrument No. 19523, in Book 37329 Page 145, of Official Records, such reservation being in favor of Teresa Pasquaro.