CYNTHIA HOLCOMB HALL, Circuit Judge:
Norma E. Worcester appeals from the decision of the district court validating a California foreclosure sale of her residence and reversing a decision of the bankruptcy court. The district court held that Worcester failed to satisfy certain requirements under California law necessary to set aside a foreclosure action. Specifically, the district court held that California law required Worcester to tender payment of the amount necessary to redeem the deed of trust at the time she filed suit to set aside the foreclosure sale, and the court determined that she had failed to satisfy this requirement. The district court also concluded that Worcester did not demonstrate that any misdescription of the subject property resulted in prejudice to Worcester’s interests at the foreclosure sale as mandated by the law of California.
We reverse and remand to the district court.
I
On October 6, 1977, Worcester entered into three loan agreements with National Mortgage Security Company (National Mortgage). The loans in the amounts of $20,000, $11,000, and $1,800 were secured by deeds of trust on Worcester’s residence and its four-acre lot. While Worcester claims that she specifically negotiated with National Mortgage for fully amortized loans, the loan agreements Worcester signed provided for balloon payments after three years.
In 1980, the balloon payments fell due and Worcester was unable to make them. National Mortgage rejected the partial payments Worcester sent to them, and Worcester and National Mortgage failed to reach any agreement on refinancing the amount owed. In June 1981, Worcester filed suit against National Mortgage, Trust Deed Diversified Services (Trust Services), and their employees, alleging fraud and breach of fiduciary duty for arranging loans for her that included balloon payments.
Worcester owned a forty-acre parcel of unimproved land adjacent to the four-acre plot containing her residence. The deeds of trust securing Worcester’s loans only encumbered the four-acre plot containing the house. Yet, when Trust Services filed their Notice of Trustee’s Sale, the notice appeared to refer to land in addition to the four-acre parcel containing Worcester’s *1227 house. The notice referred to two parcels, Parcel 1 and Parcel 2. The description under the words “Parcel 1” accurately described the four-acre lot surrounding Worcester’s residence. Under “Parcel 2” the notice read:
THE SOUTHWEST CORNER OF THE NORTHWEST QUARTER OF SECTION 2, TOWNSHIP ONE SOUTH, RANGE 17 WEST, SAN BERNARDINO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT. EXCEPT THEREFROM ONE-HALF OF ALL OIL RIGHTS, AS RESERVED BY IDA MABEL MCCLAIN IN DEED RECORDED MAY 21, 1947 IN BOOK 24548 PAGE 440, OFFICIAL RECORDS.
AND EXCEPTING THEREFROM A 25 PERCENT ROYALTY OF AND THE RIGHTS TO ALL OIL, GAS OR OTHER HYDROCARBONS OR THE PROCEEDS THEREOF, WHICH MAY BE PRODUCED FROM SAID PREMISES, AS SAID 25 PERCENT ROYALTY INTEREST IS RESERVED IN DEED RECORDED OCTOBER 2, 1951 AS INSTRUMENT NO. 19523, IN BOOK 37329 PAGE 145, OF OFFICIAL RECORDS, SUCH RESERVATION BEING IN FAVOR OF TERESA PASQUARO.
The parties agree that if the description had stated the “Southwest Quarter” as opposed to the “Southwest Corner” it would accurately describe the 40-acre parcel.
The foreclosure sale was held on February 5, 1982. The minimum bid price was set at $14,026.53. Irving Rosner purchased the property for $14,975. There were only two bidders at the auction. On February 12, 1982, Rosner filed an unlawful detainer action against Worcester, and she answered on February 23. On February 22, 1982, Rosner sold the property to William Little for $130,000. An appraiser testified before the bankruptcy court that the parcel was worth $240,000. In Re Worcester, 28 B.R. 910, 913 & n. 3 (Bankr.C.D.Cal.1983).
On March 12, 1982, Worcester filed a Chapter 13 bankruptcy petition, and on March 23, 1982, Rosner and Little filed with the bankruptcy court a complaint to vacate the automatic stay. Worcester answered this complaint on April 14 and counterclaimed to set aside the trustee’s sale, naming as counterdefendants, Rosner, Little, the lender, the mortgage brokers, and the trustee.
On June 3, 1982, the bankruptcy court granted Worcester’s motion for judgment as to title to her 40-acre parcel, and on April 8, 1983, the bankruptcy court ordered the foreclosure sale on the four-acre parcel set aside. Id. at 915. Rosner and Little appealed to the district court. The district court, in an unpublished order, reversed and entered judgment on May 25, 1984, holding that the foreclosure sale effected a valid transfer of the four-acre parcel and residence. Worcester filed her notice of appeal eleven days later, on June 5, 1984.
II
Rosner and Little argue that because Worcester’s appeal falls outside the 10-day period set out in Bankr.R. 8002 for appeals from bankruptcy judges, Worcester’s appeal is untimely. This is true, they argue, despite the fact that Worcester’s appeal would be timely under the 30-day filing period of Fed.R.App.P. 4(a)(1).
We disagree. The Advisory Committee Notes to Bankr.R. 8002 make clear that that rule applies only to appeals to the district court from final orders of a bankruptcy court. Nothing in the rule would indicate that it was intended to supplant Fed.R.App.P. 4(a)(1) and to change the period in which appeals to the courts of appeals can be taken. We decline to interpret Bankr.R. 8002 in this manner absent an express indication that the rule was intended to alter the period for appeals to this court. Cf. Cannon v. The Hawaii Corp. (In re The Hawaii Corp.), 796 F.2d 1139, 1141-42 & n. 1 (9th Cir.1986) (liberalized rules of finality in bankruptcy cases do not alter test for finality in 28 U.S.C. § 1291 cases where district court sits in bankruptcy).
*1228 Because Worcester’s appeal was filed within the 30-day period of Rule 4(a)(1), her appeal is timely, and we have jurisdiction under 28 U.S.C. § 158(d).
Ill
Appellees also argue that this appeal should be dismissed as moot because Worcester failed to obtain a stay of the foreclosure sale pending appeal.
In Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421 (9th Cir.1985), we adopted the Eleventh Circuit’s approach as to when a stay pending appeal is required in order to prevent mootness. That circuit held in Sewanee Land, Coal & Cattle, Inc. v. Lamb (In re Sewanee Land, Coal & Cattle, Inc.), 735 F.2d 1294 (11th Cir.1984), that, in certain circumstances, the failure to obtain a stay renders an appeal moot. Mootness results when the court of appeals becomes “powerless to grant the relief requested by the appellant.” Id. at 1295 (quoting American Grain Association v. Lee-Vac, Ltd., 630 F.2d 245, 247 (5th Cir.1980)).
Bankruptcy is basically a procedural forum designed to provide a collective proceeding for the sorting out of non-bankruptcy entitlements. See Jackson, Bankruptcy, Non-Bankruptcy Entitlements, and the Creditors’ Bargain, 91 Yale L.J. 857, 859-71 (1982); Baird & Jackson, Corporate Reorganizations and the Treatment of Diverse Ownership Interests: A Comment on Adequate Protection of Secured Creditors in Bankruptcy, 51 U.Chi. L.Rev. 97, 101-09 (1984). Consequently, the Supreme Court has repeatedly held that the rights of parties to a bankruptcy proceeding are “created and defined by state law.” Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). See also Ohio v. Kovacs, 469 U.S. 274, 285-86, 105 S.Ct. 705, 712, 83 L.Ed.2d 649 (1985) (“the classification of Ohio's interest as either a lien on the property itself, a perfected security interest, or merely an unsecured claim depends on Ohio law”) (O’Connor, J., concurring); Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966) (trustee assumes rights debtor had prior to filing of petition); Board of Trade v. Johnson, 264 U.S. 1, 15, 44 S.Ct. 232, 235, 68 L.Ed. 533 (1924) (same).
If Worcester has the right under California law to set aside a foreclosure sale after the sale has taken place, after deeds have been recorded, and after the property has been sold to a third party, then she has the right in bankruptcy to do the same and that right is property of the estate. See 11 U.S.C. § 541(a)(1) (property of the estate includes “all legal and equitable interests of the debtor in property”). If Worcester does have such a right under California law, we are not powerless to enforce it, and we may grant Worcester relief to the same extent California courts would in similar circumstances.
Since we determine that Worcester satisfied the requirements for setting aside the foreclosure sale and is entitled to relief under California law, this appeal is not moot.[1] See City of Valdez v. Waterkist Corp. (In re Waterkist Corp.), 775 F.2d 1089, 1091 (9th Cir.1985).
IV
We now turn to consider the question of whether Worcester satisfied California’s requirements for setting aside the foreclosure sale. Under California law, “gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside.” Whitman v. Transtate Title Co., 165 Cal. App.3d 312, 323, 211 Cal.Rptr. 582, 589 (1985); see also Sargent v. Shumaker, 193 Cal. 122, 129-30, 223 P.2d 464, 467 (1924). The bankruptcy court held that Worcester had successfully demonstrated that the misdescription of the parcel for sale found in the Trustee’s Deed and the Notice of *1229 Trustee Sale amounted to unfair prejudice. In re Worcester, 28 B.R. at 915. The bankruptcy court found that the phrase “Southwest Comer” was ambiguous and that bidders could be confused as to whether or not it referred to the 40-acre parcel (which was not subject to the deed of trust), and that this confusion was likely [2] to have dissuaded bidders seeking to purchase only single family residences from attending the trustee’s sale of the 4-acre parcel. Id,
The district court properly determined that this conclusion of the bankruptcy court was a “recommendation,” and therefore subject to de novo review. Pursuant to the 1982 Emergency Rule, passed in the wake of the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982),[3] and effective at the time of the district court proceedings,[4] Worcester’s claim to set aside the foreclosure sale was a “related” case. Thus the district court properly reviewed the bankruptcy court’s findings of both fact and law de novo.[5] In reviewing the bankruptcy court’s determination of prejudice from the misdescription, the district court reversed, finding that the phrase “Southwest Corner” referred only to a point in space of infinitesimal size and could not, therefore, be misleading. Although the district court found the purchase price was “grossly inadequate,” the court concluded that there was no material irregularity in the foreclosure sale and therefore no prejudice to Worcester.
We review the question of whether an irregularity in the sale is material de novo, since it is a question of law. See Crist v. House & Osmonson, Inc., 7 Cal.2d at 558-60, 61 P.2d at 758-59 (1936). Cf. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 981 (9th Cir.1985) (question of whether genuine issue of material fact exists for summary judgment is *1230 question of law). We find that the district court’s conclusion that there was no material irregularity is incorrect. It may be reasonable to literally construe the solitary term “Southwest Corner” as indicating a point in space. The full description of the property, however, specifically refers to oil and gas rights, which can only be understood relative to a plot of land, not to a point in space. In addition, the description refers to particular conveyances relating to the 40-acre parcel. As a result, bidders interested in a smaller lot who would have researched the described plot would have been deterred from attending the sale.
The California Supreme Court’s decision in Crist does not preclude our conclusion that a material irregularity existed. The Crist requirement that the misdescription by the inclusion of unencumbered property must cause actual prejudice or it “must be of such a substantial nature that prejudice is likely to result to the trustors” is met here. 7 Cal.2d at 559, 61 P.2d at 759. In addition, the parcel mistakenly included in this case is quite unlike the one included in Crist: the latter was equivalent to one-nineteenth of the property subject to the deed of trust and was practically worthless, 7 Cal.2d at 560, 61 P.2d at 759; the former was ten times larger than the trust property and may be worth in excess of one million dollars. 28 B.R. at 913.
California law imposes a second requirement on those seeking to set aside a foreclosure sale: “A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.” Karlsen v. American Savings and Loan Assoc., 15 Cal. App.3d 112, 117, 92 Cal.Rptr. 851, 854 (1971).
The district court held that Worcester could not succeed in her action to set aside the foreclosure sale because “it seems to be totally clear that the payment or tender must be made by the filing date either separately or in the Complaint itself____ This requirement is absolute.” The district court erred in concluding that Worcester did not make a valid tender as required under California law. We hold that Worcester did meet the tender requirements of sections 1493 and 1495 of the California Civil Code.[6]
First, Worcester expressed her willingness to tender the amount owed, as required by section 1495, in her Answer and Counterclaim before the bankruptcy court.[7] Second, we believe that Worcester’s tender was “effective” since she had the ability under California law to perform according to her offer.
To satisfy section 1495, Worcester must have been able to tender payment. The district court concluded that since Worcester admitted she could not borrow money and had none available, she was unable to tender payment. The authorities upon which the district court apparently relied in reaching this conclusion[8] deal *1231 with situations in which no tender was made in the pleadings,[9] the debtor refused to pay,[10] or improper conditions were placed upon payment,[11] all of which are distinguishable from the present case.
The fact that Worcester did not have cash immediately available is not fatal under California law. In Backus v. Sessions, 17 Cal.2d 380, 110 P.2d 51 (1941), the California Supreme Court held that the ability to tender existed where the debtor had convertible assets and the mere ability to borrow. Id. at 389-90, 110 P.2d at 56. Worcester’s request for the sale of her land for the benefit of the creditors and her offer to redeem provide the certainty of sufficient proceeds to satisfy the tender amount, and supplies no less certainty than the mere ability to borrow which constituted ability to tender in Backus.
The decision in Karlsen v. American Sav. & Loan Assoc., 15 Cal.App.3d 112, 92 Cal.Rptr. 851 (1971), is instructive. In Karlsen, the California Court of Appeal held that tender was insufficient where it consisted of the borrower’s hope that the lender would release part of the property covered by the deed, that an identified prospective purchaser would buy this part of the property, and that certain entities would agree to refinance the remaining debt that would not be satisfied from the sale. It is noteworthy that the court in Karlsen did not dispose of the borrower’s claim simply because the borrower did not have the cash to redeem and so did not make a satisfactory tender. Instead, the court evaluated the precise conditions of the borrower’s offer before concluding the offer was an inadequate “substitute tender.” Id. at 118-20, 92 Cal.Rptr. at 854-56.
The Karlsen court’s criticisms of the borrower’s tender do not apply here. First, the court noted that the tender proposed by the borrower would leave the lender without a remedy, as the borrower conditioned tender upon the lender’s releasing property from the deed of trust and thereby eliminated the lender’s security interest. Id. at 120, 92 Cal.Rptr. at 856. In the present case, however, no such conditions were placed upon the tender. In fact, Worcester asked that a neutral entity, the bankruptcy court, sell the property that was free of any deed of trust and distribute the proceeds to the creditors. Second, the borrower in Karlsen did not make an “unqualified and unconditional statement that [he would] do equity.” Id. at 119, 92 Cal.Rptr. at 855. In this case, however, Worcester made an unconditional offer to redeem or repay with money from the sale. Finally, the Karlsen court was concerned that nothing there “even remotely suggested] Karl-sen would have the ability to comply” with any terms of payment. Id. Worcester, in contrast, does not rely on the mere “hope” of the sale of land for a sufficient sum and the ability to refinance a $125,000 debt, as Karlsen did. Here, the land is worth many times the amount owed by Worcester. No refinancing would be necessary.
Finally, Rosner and Little argue that, as bona fide purchasers, the foreclosure sale cannot be set aside because they had no actual or constructive notice of Worcester’s suit against National Mortgage and Trust Services, filed in June 1981, or of the misdescription of the property contained in the foreclosure documents.[12] This argument fails under California law.
Worcester seeks to set aside the sale on the grounds that the price Ros *1232 ner paid was grossly inadequate and there was an irregularity in the sale that contributed to the inadequacy of the price. Sargent v. Shumaker, 193 Cal. at 129-30, 223 P. at 467 (1924); Whitman, 165 Cal.App.3d at 323, 211 Cal.Rptr. at 589. Whether Rosner or Little knew of Worcester’s earlier suit is irrelevant in an action to set aside a foreclosure sale on this basis.
Rosner and Little’s claim that they had no constructive notice is disproven by the record before us. The deed of trust contains an accurate description of the property subject to foreclosure; the Notice of Trustee’s Sale, the trustee’s deed to Rosner, and Rosner’s deed to Little, however, incorrectly state that the property included the 40-acre parcel. An investigation of the record pertaining to the 4-acre parcel would have shown that the deed of trust under which the property was foreclosed and the deed from the trustee did not describe the same property. Under California law, “one whose search of the record would disclose a defective property description is charged with the duty of further investigation and with knowledge of whatever it would have disclosed.” Sieger v. Standard Oil Co., 115 Cal. App. 2d 649, 657, 318 P.2d 479, 484 (1957) (citing Leonard v. Osburn, 169 Cal. 157, 161, 146 P. 530, 532 (1915); see also Cal.Civ.Code §§ 18-19 (West 1982). Inquiry would have disclosed that the Notice of Trustee’s Sale also misdescribed the property subject to foreclosure and thereby put Rosner and Little on notice that there was an irregularity in the sale that may have prejudiced Worcester by discouraging buyers interested only in residential properties. In other words, reasonable investigation would have revealed that Worcester had the right to avoid the sale under Whitman.
We therefore reverse the decision of the district court and remand the case for entry of an appropriate order.[13] See 28 B.R. at 916-17.
REVERSED and REMANDED.

. Rosner and Little also claim this appeal is moot under In re Madrid, 725 F.2d 1197 (9th Cir.1984). That case, which addressed the ability to set aside a transfer under 11 U.S.C. § 548(a) and Nevada law, is inapposite.

. Under Crist v. House & Osmonson, Inc., 7 Cal.2d 556, 61 P.2d 758 (1936), in order to justify setting aside a foreclosure sale, the court must find that the misdescription resulted in actual prejudice or was "of such a substantial nature that prejudice [was] likely to result to the trustors.” Id. at 559, 61 P.2d at 759.

. The Model “Emergency Rule" was adopted as a local rule by the district courts and governed any bankruptcy proceedings pending from December 25, 1982 to July 10, 1984. Model Rule (h); see 1 Collier on Bankruptcy (L. King 15th ed. 1986) 3-15, 3-67 to 3-68 (hereinafter Collier ); In re Commercial Western Finance Corp., 761 F.2d 1329, 1333 n. 8 (9th Cir.1985) (Marathon applies to judgments entered after December 25, 1982). The Emergency Rule was adopted because the Marathon decision "placed in question the constitutionality of the entire system of bankruptcy courts created” by Congress. See SEC v. Danning (In re Carter), 759 F.2d 763, 765 (9th Cir.1985). The Rule was passed as a temporary measure to avoid the collapse of the bankruptcy system by providing for the orderly administration of bankruptcy proceedings until Congress could enact revisions of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549, which would meet the Supreme Court's objections raised in Marathon. See id., Collier at 3-15.
Congress enacted the revised legislation, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (hereinafter 1984 Amendments), on July 10, 1984. In re Carter, 759 F.2d at 765. The jurisdictional provisions of the 1984 Amendments became effective on this date.

. This case clearly falls under the Emergency Rule, since the bankruptcy court’s judgment to set aside the foreclosure sale was entered after December 25, 1982 and the district court’s decision occurred before July 10, 1984. See ante n. 3.

. Emergency Model Rule (d)(3)(A) describes related proceedings as “civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court.” Rule (d)(3)(B) and Rule (e) explain that the district court's review in related proceedings is de novo. Even if the 1984 Amendments governed this case, the same standard of review would probably be applied, since "non-core” proceedings are subject to this review. 28 U.S.C. § 157(c)(1) (where parties do not consent to bankruptcy court's jurisdiction). Cf. Collier at 3-49 and 28 U.S.C. § 157(c)(2). The proceedings relating to the foreclosure sale’s validity involve only state-created rights, and therefore are not “core” proceedings involving federal bankruptcy concerns, such as the restructuring of the debtor-creditor relationship. Marathon, 458 U.S. at 71, 102 S.Ct. at 2871 (plurality opinion). In any event, courts “should avoid characterizing a proceeding as ‘core’ if to do so would raise constitutional problems.” Piombo Corp. v. Castlerock Properties (In re Castlerock Properties), 781 F.2d 159, 162 (9th Cir.1986).

. Worcester asserts that the tender requirement is satisfied because she has a right to an equitable setoff against the lenders as a result of her state court fraud action against National Mortgage and Trust Services. Worcester rests her argument on the California Supreme Court’s decision in Hauger v. Gates, 42 Cal.2d 752, 269 P.2d 609 (1954). Hauger also involved an action to set aside a foreclosure sale but the procedural posture of that case was that of a motion to dismiss. Worcester correctly states that Hauger stands for the proposition that a setoff can be used to satisfy the tender requirement. Id. at 753, 269 P.2d at 610. We need not address the applicability of Hauger since we find the tender requirement was satisfied apart from Worcester’s alleged right to equitable setoff.

. Worcester asked the court: "To order an appraisal and sale of a portion of said real property to recover its market value for the benefit of creditors and remit the balance to Debtor, or to allow the Debtor to redeem said property.” Both these alternatives express Worcester's willingness to pay. See Copsey v. Sacramento Bank, 133 Cal. 659, 662, 66 P. 7, 9 (1901) (offer to redeem must be made to set aside sale). Worcester’s offer to redeem is an offer to tender the amount of indebtedness, as she offered $7,922 more than the amount of her indebtedness.

. See 1 H. Miller & M. Starr, Current Law of California Real Estate, § 3:125, at 549-50 & n. 16 (1975 & Supp. Oct. 1986), and authorities cited therein.

. See, e.g., Py v. Pleitner, 70 Cal.App.2d 576, 582, 161 P.2d 393, 396 (1945).

. See, e.g., Shimpones v. Stickney, 219 Cal. 637, 649, 28 P.2d 673, 678 (1934).

. See, e.g., Weiner v. Van Winkle, 273 Cal. App.2d 774, 78 Cal.Rptr. 761 (1969) (conditioned upon abandonment of claim for attorneys’ fees).

. Rosner and Little also claim that under the "relation back doctrine,” title taken at a foreclosure sale cannot be affected by adverse claims or interests arising after the execution of the deed of trust. Hohn v. Riverside County Flood Control and Water Conservation Dist., 228 Cal.App.2d 605, 39 Cal.Rptr. 647 (1964). This doctrine only applies to title taken at a valid foreclosure sale, and so is inapplicable here. Id. at 613-14, 39 Cal.Rptr. at 652.

. Since we reverse, Appellees’ request for attorney’s fees is denied.