In re Mildred V. WILLIAMS, Debtor.

Mildred V. WILLIAMS, Plaintiff,

v.

UNITED INVESTMENT CORP., aka R.G. Conveyance Corp., a California Corporation, J. De Witt Fox, M.D. and Dennis E. McGoldrick, Chapter 7 Trustee, Defendants.

Bankruptcy No. LA 90–03513 LF.
Adv. No. LA 90–0418–LF.

United States Bankruptcy Court,
C.D. California.

Feb. 15, 1991.

312

Marie E. Davis, Linda G. Zieff, A Law Corp., Inglewood, Cal., for debtor/plaintiff.

Mark K. Worcester, Auturo M. Cisneros, Alvarado, Rus & McClellan, A Professional Corp., Orange, Cal., for defendants, United Investment Corp. and J. De Witt Fox, M.D.

Dennis McGoldrick, Gardena, Cal., Trustee.

### AMENDED OPINION RE SUMMARY JUDGMENT MOTION

LISA HILL FENNING, Bankruptcy Judge.

Plaintiff Mildred V. Williams (Debtor) filed a complaint under 11 U.S.C. § 549 to avoid a foreclosure sale on her house. The foreclosure sale occurred before her bankruptcy petition was filed, but was not recorded until after the filing. Under California's pure "race notice" recording statute, the sale was thus unperfected when the notice of bankruptcy was recorded.

This Court holds that the post-petition recording of the Trustee's Deed of Sale and subsequent resale of the property are avoidable in this suit by the Chapter 13 Debtor. The trustee in bankruptcy qualifies as a hypothetical bona fide purchaser for value whose rights in the property cut off those of the defendants claiming title through the foreclosure sale.

## FACTS

In May 1987, Debtor obtained a $7,500.00 loan from J. de Witt Fox ("Fox") that was secured by a properly recorded third deed of trust on her home. When Debtor fell behind in her payments on the note, Fox's trustee, United Investment Corporation ("United"), recorded a notice of default and election to sell in February 1988. On June 15, 1988, United recorded a notice of trustee's sale scheduling the original foreclosure sale for July 1, 1988.

Debtor filed a Chapter 13 petition on June 23, 1988, thereby stopping the foreclosure sale. She confirmed a Chapter 13 plan calling for payments on Fox's note. After about eight months, however, she again fell behind in her payments. In July 1989 United obtained an order requiring adequate protection payments. After Debtor defaulted again on her payments to Fox as well as on her plan payments, her Chapter 13 case was dismissed in January 1990. On February 12, 1990, United conducted a foreclosure sale at which Fox made a successful credit bid.

On February 14, 1990, Debtor filed a Chapter 7 petition and properly recorded a notice of the bankruptcy petition.

On February 15, 1990, Fox recorded his Trustee's Deed Upon Sale. On February 22, 1990, Fox sold the property to Barbara A. Rader ("Buyer") in exchange for payment of the amount then due under his third deed of trust. Under her grant deed, Buyer took title subject to two senior lien holders, whom she brought current.

Debtor filed a complaint to avoid the foreclosure sale, naming Fox and United as defendants. Buyer then filed a motion for relief from stay, seeking permission to proceed with an unlawful detainer action. Because avoidance of the foreclosure would necessarily invalidate the subsequent resale, the parties stipulated that Buyer would be deemed to be an additional defendant in the adversary proceeding and that Buyer's relief from stay motion should be heard with the adversary proceeding.

The Chapter 7 trustee has not appeared in either matter because there is unlikely to be any realizable equity value for the estate after the liens and Debtor's homestead exemption are satisfied. Debtor filed the Chapter 7 case to gain the opportunity to sell the house, satisfy the secured obligations, and benefit from her homestead exemption.

Defendants moved to dismiss the adversary proceeding for failure to state a claim. Debtor responded with a cross-motion for summary judgment. The parties agree that the material facts concerning the timing of the bankruptcy petition and the transfers of the property are undisputed. The disputed issues are all legal questions. Therefore, summary judgment is appropriate. *See, e. g., California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

## DISCUSSION

*Does the Debtor have standing to bring this action?*

Debtor seeks to avoid the foreclosure sale and to be reinstated in title. She has standing to pursue this avoidance action because of her interest in preserving her homestead exemption. Section 522(h) provides:

> "(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> > "(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549 or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> >
> > "(2) the trustee does not attempt to avoid such transfer."

Although given notice of these proceedings, the Chapter 7 trustee has chosen not to appear. On April 6, 1990, he filed a "no asset" report, which reflected his determination that the value of the scheduled assets of the estate does not exceed their exempt value and that he asserts no interest in the scheduled assets.

In this case, the requirements of section 522(h) have been satisfied. *See In re Worcester*, 28 B.R. 910, 916 (Bankr.C.D. Cal.1983) (Chapter 13 debtor has standing under section 522(h) to bring Section 548 claim); *In re Coleman*, 21 B.R. 832 (Bankr. S.D.Tex.1982) (same). The Debtor is entitled to pursue this action to preserve the value of her exemption, even if there is no benefit to her other creditors or to the estate. *Deel Rent-a-Car, Inc. v. Levine*, 721 F.2d 750, 754 (11th Cir.1983).

*Was the foreclosure sale a transfer?*

■ Debtor's complaint rests upon section 549(a) of the Bankruptcy Code (11 U.S.C. Section 549), which provides:

"(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

"(1) made after the commencement of the case; and

"(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

"(B) that is not authorized under this title or by the court."

The first issue is whether the foreclosure sale constituted a *transfer* within the meaning of this section. "Transfer," a defined term under the Bankruptcy Code, means:

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest *and foreclosure of the debtor's equity of redemption*." 11 U.S.C. § 101(50) (Emphasis supplied).

The highlighted language was added to the definition as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). It was intended to resolve the controversial split between the Fifth and Ninth Circuits over whether a properly conducted, non-judicial foreclosure sale could be challenged as a fraudulent conveyance under section 548 of the Code. In *Durrett v. Washington National Ins.*, 621 F.2d 201 (5th Cir.1980), the Fifth Circuit had held that a foreclosure sale constituted a transfer subject to avoidance. By contrast, the Ninth Circuit had held in *In re Madrid*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), that the transfer of the debtor's interest at issue in a foreclosure sale occurred when the security interest was originally given, not upon foreclosure. Detailed analysis of the messy legislative history of the BAFJA amendments indicates that Congress apparently intended to adopt the *Madrid* result—that is, to protect properly conducted nonjudicial foreclosure sales from challenges as fraudulent conveyances, but failed to enact all of the language necessary to accomplish that goal. *See In re Verna*, 58 B.R. 246 (Bankr.C.D.Cal.1986).

The Ninth Circuit recently revisited the issue of whether a foreclosure sale is a transfer in *In re Ehring*, 900 F.2d 184 (9th Cir.1990). The debtor in *Ehring* argued that the foreclosure and resale of his house should be avoided as a preference under section 547 of the Code. In holding that a foreclosure sale is a "transfer," the Court observed:

"When the creditor records its security interest, its interest in the debtor's property is not complete. The debtor still has a right to possession, equitable title, and the right of redemption. When the foreclosure sale is completed, those interests are either transferred or extinguished. That Congress amended the definition of 'transfer' to explicitly include the 'foreclosure of the debtor's equity of redemption' supports this analysis." *Ehring*, 900 F.2d at 187.

*Madrid* has thus been legislatively and judicially overruled: a foreclosure sale does constitute a "transfer" within the meaning of Section 101(50), and therefore is subject to avoidance under sections 547, 548 and 549 of the Bankruptcy Code.

*Did the transfer here occur pre-petition or post-petition?*

■ The bankruptcy petition in this case was filed and recorded between the date of the foreclosure sale and the recording date of the foreclosure sale deed. The second issue is therefore when this foreclosure

sale was deemed to be *completed* under California law.

■ Perfection of an interest in California real property does not occur until recordation of the document with the county recorder. Under California's race-notice recording statute, an unrecorded conveyance of real property is void as against any *bona fide* purchaser for value whose conveyance is recorded first. *Cal.Civ.Code* Sections 1213–1215 (West 1982). *See In re Ehring, supra,* 900 F.2d at 188; *In re Chenich,* 100 B.R. 512 (9th Cir. BAP 1987), *app. dism'd,* 883 F.2d 1023 (9th Cir.1989) (holding that a grant deed recorded within 90 days of the perfection is avoidable as a preference because the transfer was not, as a matter of law, perfected at delivery of the deed).

Under California law, Fox's foreclosure sale had *not* been perfected when Debtor filed and recorded her bankruptcy petition. Therefore, the recording of the deed by foreclosure and subsequent resale of the property constitute post-petition transfers properly challengeable under Section 549 of the Code, rather than a prepetition transfer potentially avoidable under Section 548.

This conclusion is compelled by *In re Walker,* 861 F.2d 597 (9th Cir.1988). In *Walker,* the Ninth Circuit held that a Chapter 13 debtor could invoke Section 549(a) to set aside a foreclosure sale of her property where, as here, the debtor recorded a notice of her bankruptcy after the foreclosure sale had been held, but before the purchaser recorded his trustee's deed of sale.

*Does Knowledge of the Foreclosure Sale Preclude BFP Status For the Bankruptcy Trustee?*

■ Notwithstanding *Walker,* defendants argue that the Debtor must prove that she herself qualifies as a bona fide purchaser for value in order to avail herself of the "strong arm" powers of Section 544(a)(3) of the Bankruptcy Code, which provides:

"(a) The trustee shall have, as of the commencement of the case, *and without regard to any knowledge of the trustee* or of any creditor, the rights and powers of, or may avoid any transfer of property

of the debtor or any obligation incurred by the debtor that is voidable by—

"(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, *that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case,* whether or not such a purchaser exists." (Emphasis supplied.)

Under Section 522(h), the Debtor is prosecuting this action based on the trustee's avoiding powers. The test is *not* whether the Debtor qualifies as a BFP under Section 544 and 549, but rather whether the *trustee* does.

■ Section 544(a)(3) grants a bankruptcy trustee status of a hypothetical *bona fide* purchaser as a matter of law; neither actual nor constructive notice to the trustee through the debtor defeats this status. *In re Tleel,* 876 F.2d 769 (9th Cir. 1989). Thus, the prior recording of a notice of sale by the secured creditor was held in *Walker* to be insufficient to defeat a trustee's hypothetical *bona fide* purchaser status, even though the existence of a recorded notice of sale probably would prevent any *actual* subsequent purchaser from meeting the BFP standard of taking without notice. *In re Walker, supra,* 861 F.2d at 600. The Third and Fourth Circuits have reached the same conclusion. *In re Ward,* 837 F.2d 124 (3rd Cir.1988); *In re Konowitz,* 905 F.2d 55 (4th Cir.1990). Indeed, it is questionable whether the existence of stale recorded notice is sufficient to provide effective notice of the property's status when a bankruptcy is filed months or even years later. *See, e.g., In re Tome,* 113 B.R. 626 (Bankr.C.D.Cal.1990).

*Should this Post–Petition Transfer Be Avoided?*

The codification of the automatic stay was one of the major reforms embodied in the 1978 Bankruptcy Code. As the legislative history of section 362 emphasizes:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, *and all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him [or her] into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* U.S. Code Cong. & Admin.News 1978, pp. 5963, 6296 (emphasis supplied).

*See In re Taylor,* 884 F.2d 478 (9th Cir. 1989). The filing of the petition is supposed to envelop the debtor in the protective armor of the automatic stay, providing immunity from creditor's attack absent bankruptcy court permission for the creditor to proceed.

■ The Ninth Circuit adheres to the "general rule" that "actions taken in violation of the automatic stay are void and without effect." *In re Taylor,* 884 F.2d 478, 483 (9th Cir.1989); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir. 1985). The courts throughout the country, however, are sharply split, with a significant minority asserting that actions in violation of the automatic stay should be treated as *voidable* only, not void. *See, In re Lampkin,* 116 B.R. 450, 451 (Bankr.D. Md.1990) (collecting cases and following the "majority" rule that such actions are void).

Even under the majority view, the rule that actions violating the stay are void is *not* absolute. Important exceptions are set forth in the Bankruptcy Code and case law. Section 549(c), for example, allows a good faith post-petition purchaser of real property for fair consideration to retain either the property or a lien on the property under some circumstances. Similarly, Section 542(c) protects an entity without knowledge of the case that transfers estate property without permission.

Under case law, the courts have carved out limited exceptions to deal with special problems, such as those created by the "stealthily silent" debtor who continues actively to defend lawsuits, sometimes for years after filing a bankruptcy petition, without informing the other parties or the court about the bankruptcy case until an adverse judgment is imminent. *See, e.g., In re Calder,* 907 F.2d 953, 956–57 (10th Cir.1990); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984); *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976–77 (1st Cir. 1982). These cases apply traditional equitable principles of laches and estoppel to prevent deceptive or incredibly ignorant debtors from unfairly benefitting by an eleventh-hour ambush of their unsuspecting opponents.

■ To address such exceptional circumstances, Section 362(d) confers on the bankruptcy court the power to *annul* the automatic stay. Annulment renders the stay a nullity, as if it never existed. *In re Pettibone Corp.,* 110 B.R. 837 (Bankr.N.D.Ill. 1990), *app. dism'd,* 909 F.2d 1486 (7th Cir. 1990). The availability of annulment protects creditors and third parties who have, innocently and without knowledge of the case, taken actions or detrimentally changed their positions in pursuit of their state or federal remedies. Annulment has also proven an effective weapon against debtor fraud, because the bankruptcy court can break a cycle of abusive, multiple bankruptcy petitions filed to hinder and delay creditors, by validating a foreclosure sale conducted pursuant to relief from stay orders obtained in a debtor's prior bankruptcy cases. *E.g., In re Kinney,* 51 B.R. 840 (Bankr.C.D.Cal.1985).

■ The power to annul the stay must, however, be exercised sparingly. As the Ninth Circuit admonished in *In re Shamblin,* 890 F.2d 123, 126 (9th Cir.1989):

"Any equitable exception to the automatic stay should be narrow and applied only in extreme circumstances".

In *Shamblin,* the court refused to annul the stay because of bad faith on the part of the *creditor* in connection with a post-petition tax sale and issuance of a tax deed.

Despite such strong statements of principle from the Ninth Circuit, the Ninth Circuit Bankruptcy Appellate Panel continues

to assert that the Ninth Circuit does not really mean what it says. Rather, in the BAP's analysis, the Ninth Circuit in practice actually follows the minority rule, treating violations of the stay as *voidable* only, not void. *In re Brooks,* 79 B.R. 479 (9th Cir.BAP 1987). Thus, in *In re Schwartz,* 119 B.R. 207 (9th Cir.BAP 1990), the Bankruptcy Appellate Panel denied a challenge to an IRS penalty assessed during a prior bankruptcy case in violation of the automatic stay. Having failed to move to set aside that assessment before dismissal of that case, the debtors refiled shortly thereafter. When debtors sued to invalidate the IRS lien, the BAP refused to treat the assessment as void, holding that:

> "[T]ransfers in violation of the automatic stay are *voidable* in an action brought during the bankruptcy in which the violation occurred."

In the BAP's view, the debtors' failure to challenge the assessment in the original Chapter 11 case precluded the invalidation of the IRS's secured claim in the later case.

The *Schwartz* opinion does not fully examine the consequences of its holding. The BAP grudgingly acknowledges that declaring actions in violation of the stay to be merely voidable, not void,

> "... may have the effect of impairing the fresh start purposes of the automatic stay by requiring the debtor to enforce the stay through actions to avoid certain transfers, [but] any impairment can be offset by rigorous application of section 362(h)."

By thus casually brushing aside the implications of its decision, the Panel has failed to give due weight to the fundamental issue at stake here. In effect, the BAP approach to the problem of the unauthorized post-petition transfer chooses to protect the "good faith" creditor who proceeded in violation of the stay, at the expense of the "good faith" debtors who rely on the stay to prevent creditors from seizing or selling their property. The "voidable" rule implicitly imposes on the *debtor* (or trustee) the burden of persuading the court that the transfer should be set aside.

■ This court declines to follow the BAP approach, choosing instead to follow the Ninth Circuit's express holdings that actions violating the stay are void, thereby imposing on the creditor/transferee the burden of proving that the transfer falls within the narrow exceptions to the rule of voidness.

■ The BAP's optimistic assumption that "more rigorous" enforcement of Section 362(h) can and will deter potential violations of the stay is unsupported, and probably unwarranted. Section 362(h) only provides sanctions for *willful,* not inadvertent violations of the stay. Moreover, remedies under that subsection are available *only* to debtors who are natural persons, and *not* to corporate and partnership debtors. *See, e.g., In re Chateaugay Corp.,* 920 F.2d 183 (2d Cir.1990); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986); *In re Brilliant Glass, Inc.,* 99 B.R. 16 (Bankr.C.D.Cal. 1988). To prevail, the debtor must prove that the creditor or transferee intentionally violated the stay even though it knew or should have known that the bankruptcy stay was in effect. The requisite knowledge and intent may be difficult to establish in many cases. Furthermore, damages imposed rarely amount to much more than the attorney fees and costs involved in prosecuting the Section 362(h) action, and thus do not carry much *in terrorem* clout. *In re Bulson,* 117 B.R. 537 (9th Cir.BAP 1990) (awarding $982.20 in attorney fees and costs against Internal Revenue Service for improper levy); *In re Bradford,* 112 B.R. 347 (9th Cir.BAP 1990) (awarding damages of $838.95 plus attorney fees of $350.00 against creditor for refusing to return improperly repossessed car); *In re Gustafson,* 111 B.R. 282 (9th Cir.BAP 1990) (affirming award to prevailing debtor of $312.50 in attorney fees against university wrongfully withholding transcript).

More importantly, deterrence of violations is not the only—nor even the major—issue here. The question is whether the debtor has the right to undo the violative action. Under the Ninth Circuit rule, the answer is yes, unless the narrow statutory

exceptions apply or bad faith on the debtor's part is proven by the *creditor.* Under the minority view, the answer is maybe, if the *debtor* avoids procedural pitfalls (as in *Schwartz, supra*), and can establish an equitable right to have the transfer set aside. This shifting in the burden of proof is fundamentally inconsistent with the basic premise of the automatic stay.

■ In this case, it is uncontroverted that the foreclosure sale was not recorded until after the petition was filed and recorded, making it a post-petition transfer. Having established the post-petition character of the transfer, Debtor has proven her *prima facie* case to void the transfer. Under the rule of *In re Taylor, supra,* 884 F.2d 478, she need prove nothing more. Defendants have offered no evidence that any exceptions to the general rule of voidness apply here. Therefore, Debtor is entitled to summary judgment voiding the foreclosure.

### What Remedy is Appropriate?

■ Seeking to prevent the unwinding of the sale transaction, the defendants argue that Section 549(c) shelters Fox's resale to Buyer. This section provides:

"(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, *before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser.* A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, *unless a copy or notice of the petition was so filed before such transfer was so perfected.*" (Emphasis supplied.)

Unlike the bankruptcy trustee, however, Buyer lacks the glorified status of a hypothetical BFP. Because notice of the bankruptcy petition was properly recorded before Buyer's deed, Buyer is conclusively presumed to have had notice of the bankruptcy precisely because the notice of bankruptcy. Thus, Buyer cannot take as a BFP herself, and does not qualify for the section 549(c) exception.

Therefore, Buyer is not entitled to retain the property. Both the original foreclosure sale and the subsequent resale are void. Debtor is entitled to be restored in title, subject to all liens and encumbrances that existed immediately prior to filing, plus interest that would have continued to accrue thereon. Buyer is entitled to assume the pre-petition lien position of Fox, and may include post-petition advances to senior lienholders as part of her expenses recoverable under the Note and Trust Deed. She may pursue and may have potential claims against Fox and the title insurer, but she has no other claims against Debtor or this estate.

### CONCLUSION

Based upon the above discussion, this Court grants summary judgment to Debtor and denies the motions of Defendants, pursuant to a separate order submitted herewith.