In re Damon DUNCOMBE, Debtor.

William LITTLE, Movant,

v.

Damon DUNCOMBE, Respondent.

Bankruptcy No. LA 91–56733.

United States Bankruptcy Court,
C.D. California.

July 30, 1992.

William Little, pro se.

Nancy Curry, Los Angeles, Cal., trustee.

## AMENDED OPINION ON MOTION FOR RELIEF FROM STAY

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I.

This case involves a real race to the county recording office to record a deed under the recording act, the bane of all first year law students.

The race began with the fall of the hammer at the foreclosure sale of debtor Damon Duncombe's Inglewood home at approximately 11:00 a.m. on December 12, 1991. The sale took place at the main entrance to the Moss Building on Burbank Boulevard in Tarzana, California, the location of the offices of R & R Conveyance, the foreclosure trustee under Duncombe's deed of trust. The participants in the race were Duncombe and William Little,[1] movant in this relief from stay motion, who made the winning bid at the foreclosure sale.

---

1. Little specializes in purchasing property at foreclosure sales, and had no prior interest in Duncombe's property.

Pursuant to California foreclosure law,[2] Little's predecessor recorded a notice of default, and three months thereafter recorded and published a notice of sale. While California law permits the foreclosure sale to be postponed in certain circumstances (which are frequently important for bankruptcy purposes),[3] the sale in this case took place on the originally scheduled date.

The race routes for the two runners were quite different, but both ended at the Los Angeles County recorder's office in the Hall of Administration in downtown Los Angeles. The debtor's route led first to the bankruptcy court's chapter 13 filing office on the eighth floor of the Federal Building in downtown Los Angeles, to file this chapter 13 bankruptcy case. The debtor then had to proceed to the Hall of Administration to record a notice of the bankruptcy filing.

Little's route to the recorder's office was somewhat more direct, but not at all easy to negotiate. His designated runner James Lee [4] first had to go upstairs to suite 303 in the Moss Building to R & R's office to obtain a foreclosure deed. Lee was informed that the deed would be sent to be recorded in the next several days, and he was able to obtain the deed the same day only after explaining that Little had previously lost just this kind of race, and that it was extremely important to obtain the deed right away. While Lee succeeded in persuading R & R to prepare the deed the same day and to give it to him to record, he was told to come back after lunch to pick up the deed. After a quick lunch at a fast food outlet nearby, Lee returned to the R & R office, and had to wait until approximately 3:00 p.m. to obtain the deed. By then afternoon traffic on the freeway had built up, and it was 4:01 p.m. before he was able to record the deed at the Hall of Administration.

In the meantime, the debtor's route to the recorder's office posed difficulties as well. He already had the chapter 13 petition and supporting documents in hand to file his chapter 13 case. He was told to file these papers at the bankruptcy court before 11:00 that morning, so that he could prevent the foreclosure sale from taking place. However, for some reason he did not get to the bankruptcy court before the sale. Thus he came to the sale with the papers in hand, but with no bankruptcy petition or automatic stay in place.

After the sale was completed, Duncombe headed directly to the Federal Building, where the chapter 13 filing office is located, but it took him some time to find the address. When he finally found the building, there was no parking available at the building or anywhere nearby. He drove around the neighborhood (a designated high crime area) for some fifteen minutes before he finally found a parking spot in a private lot. It then took him ten minutes to walk back to the Federal Building, and another ten minutes to find the chapter 13 office. By this time it was almost 1:00, and the line to get into the chapter 13 filing office was very long. He waited nervously in line for 45 minutes before it was his turn at the front. He paid his $120 filing fee, and obtained a certified copy of the petition for another dollar.

By now it was almost 2:00, and he still had not had lunch. Someone told him that there was a cafeteria on the third floor, and he went there and got a quick lunch. It was almost 2:30 when he began the several-block walk to the county recorder's office. He arrived there shortly after 3:00, and recorded his notice of filing of his bankruptcy case at 3:21 p.m. Fortunately for Duncombe, Lee did not arrive until 40 minutes later.

Having won the race to the recorder's office, Duncombe now claims that the

---

**2.** Cal.Civ.Code §§ 2924–2924k (West 1982). *See Tome v. Baer (In re Tome)*, 113 B.R. 626, 629–32 (Bankr.C.D.Cal.1990).

**3.** *See, e.g., Tome v. Baer (In re Tome)*, 113 B.R. 626 (Bankr.C.D.Cal.1990).

**4.** From this point on to the end of this section, the facts are conjectured by the Court, except for the times for recording the foreclosure deed and the notice of bankruptcy.

transfer of the property in the foreclosure sale is avoidable under the Bankruptcy Code, while Little claims that the bankruptcy trustee's bona fide purchaser status (through which the debtor claims his entitlement) is defeated by constructive notice of the sale.

## II.

■ The Court holds that a purchaser at a foreclosure sale, who records the trustee's deed reasonably promptly and on the same day as the sale, nevertheless does not prevail over the prior owner who files and records an intervening bankruptcy case.

This case is governed by the California recording act, which provides:

Every conveyance of real property ... is void as against any subsequent purchaser ... of the same property ... in good faith and for a valuable consideration, whose conveyance is first duly recorded ...

California Civil Code § 1214 (West Supp. 1992).

■ This is a typical race-notice recording statute. *Walker v. California Mortgage Service (In re Walker)*, 861 F.2d 597 (9th Cir.1988); *Williams v. United Investment Corp. (In re Williams)*, 124 B.R. 311, 315 (Bankr.C.D.Cal.1991). Under a race-notice recording act, the party who wins the race to the courthouse to record a conveyance of real property obtains superior title unless the winner has notice of the conveyance to the second finisher in the race. *Walker*, 861 F.2d at 600.

Here Little lost the race to the county recording office. Duncombe filed this bankruptcy case and recorded notice thereof before Little recorded his trustee's deed. Thus the foreclosure sale is subject to avoidance under the Bankruptcy Code.

The right to avoid a real property transfer that is unrecorded at the time of filing of the bankruptcy case arises from Bankruptcy Code § 544(a)(3), the "strong arm" clause, which provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

.    .    .    .    .

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Under this provision a bankruptcy trustee has the status of a hypothetical bona fide purchaser as a matter of law, and neither actual nor constructive notice to the trustee (or to the debtor, standing in the shoes of the trustee) defeats this status.[5] *Williams*, 124 B.R. at 315. Since the bankruptcy petition in this case was recorded prior to the trustee's deed, the trustee's deed is presumably avoidable, and relief from stay should not be granted to Little.

■ There is a division of authority on whether a debtor in possession in a chapter 13 case has the right to exercise the avoiding powers given to a trustee under Bankruptcy Code § 544. *See In re Jernigan*, 130 B.R. 879, 887 (Bankr.N.D.Okla.1991) and cases cited therein. While Little claims that a debtor has no such right, the Ninth Circuit cases that he cites do not so hold, and the Court has not been able to find any Ninth Circuit authority on this issue. The majority view, however, is that a chapter 13 debtor does have such authority. Because Little has presented no authority or argument to the contrary, the Court assumes that the debtor has this right.

Section 544 was applied to foreclosure sales in *Williams* and *Walker*. In *Walker* the Ninth Circuit affirmed this Court's de-

---

5. For a narrow exception to this rule, *see Briggs v. Kent (In re Professional Investment Properties)*, 955 F.2d 623 (9th Cir.1992), *petition for cert. denied*, —— U.S. ——, 113 S.Ct. 63, —— L.Ed.2d —— (1992) (strong-arm power does not permit trustee to avoid transaction disclosed in an involuntary bankruptcy petition).

cision that permitted a debtor to set aside a trustee's deed to a third party purchaser at a foreclosure sale conducted after the filing of a chapter 13 case (and without notice of the filing), where the debtor had recorded his notice of filing of the case before the purchaser at the foreclosure sale had recorded his deed. The circuit court found that consummation of the foreclosure sale of a chapter 13 debtor's mortgaged property, prior to the purchaser's receiving notice of the bankruptcy filing, did not perfect the transfer under California's race-notice recording statute. *Walker*, 861 F.2d at 600.

In *Williams*, as in this case, the foreclosure took place before the filing of the bankruptcy case, but the debtor recorded a notice of filing of the case before the purchaser at the foreclosure sale recorded his deed. Relying on *Walker*, the court held in *Williams* that perfection of an interest in California real property does not occur until recordation of the deed with the county recorder, and that the sale was subject to avoidance. *Williams*, 124 B.R. at 315.

The principal difference between this case and *Walker* is that it took the purchaser 34 days to get to the recording office in *Walker*, whereas Little arrived there the same afternoon in this case. Nonetheless, the debtor arrived first with a recorded notice of filing of this bankruptcy case.

The California legislature could easily provide for people in Little's position in the recording act. In the past, several states had recording acts that provided a grace period of a number of days for recording a transaction, so that the perfection of the transaction related back to the date of the transaction. As to real property, all such statutes have disappeared.

Retroactive perfection is alive and well in the personal property arena under the Uniform Commercial Code, however. *See* UCC §§ 9–301(2), 9–304 and 9–306 (1991). The California legislature has enacted these provisions, and could provide similar pro-

tection for purchasers of real property at foreclosure sales, where simultaneous recordation may not be practical. However, it is not the job of the Court to write a provision into the California recording act that the California legislature has not seen fit to enact. Little must look to the California legislature for such relief, and not to this Court.

Little also argues that he should prevail on the authority of *Briggs v. Kent (In re Professional Investment Properties)*, 955 F.2d 623 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 63, —— L.Ed.2d —— (1992), on the grounds that this decision overrules the *Williams* decision. In *Professional Investment* a petitioning creditor in an involuntary bankruptcy case, in anticipation of the sale of the debtor's real property by the trustee, tried to place an equitable lien on proceeds of the sale pursuant to a deed of trust as security for a loan. The Ninth Circuit held that the debtor's involuntary petition, which disclosed the equitable lien, put the trustee on sufficient inquiry notice of the petitioning creditor's interest under an unrecorded instrument so that the trustee could not invoke avoidance powers. While *Professional Investment Properties* found a narrow exception to the *Walker* rule, *Walker* remains good Ninth Circuit law, and is binding on this Court.

■ The conclusion to be drawn from this authority is that, while acceptance of the highest bid may complete a foreclosure sale, it is recordation of the sale, rather than its consummation, that perfects the transfer of the property against avoidance by a trustee in bankruptcy. The Court concludes that this motion is governed by *Williams* and *Walker*, and that relief from stay must be denied.

The Court's ruling does not necessarily leave Little without a remedy to avoid this kind of problem. A foreclosing secured creditor can hold the foreclosure sale immediately outside the Hall of Records,[6] and

---

6. It does not appear that it would be logistically impossible to hold all foreclosure sales immediately outside the county records office. In 1991

there were fewer than 4,000 real property foreclosures in Los Angeles county, the most populous county in the United States. This amounts

deliver a deed immediately upon the completion of the sale. A purchaser such as Little can then rush into the office and record the deed immediately, and thus make it virtually impossible for a foreclosed-out owner (or anyone else) to obtain priority over the purchaser at the foreclosure sale.

The main problem with such a procedure is to motivate a foreclosing creditor to adopt it. However, the failure to conduct the sale in such a fashion that the foreclosure deed can be recorded immediately may fail to qualify as a commercially reasonable sale, which may expose the foreclosing creditor to damages for the difference between the price realized and the fair market value of the property. This is not a matter that the Court need determine at this time, because the foreclosing creditor is not before the Court, and Little has not claimed damages for the failure to proceed with foreclosure in a commercially reasonable manner.

### III.

For the foregoing reasons the Court finds that a foreclosure sale is subject to avoidance under a race-notice recording act and the "strong arm" provision of the Bankruptcy Code, if the foreclosed-out owner files a bankruptcy case and records it prior to the recordation of the foreclosure deed, even though the purchaser has acted diligently in recording his foreclosure deed.

to less than 16 foreclosures per business day, on the average, which certainly can be accommo-

dated on the steps of the Hall of Records.