In re Cindy Ann MacDONALD, aka Cindy Ann Shyken, Debtor.

Cindy Ann MacDONALD, Plaintiff,

v.

Michael TACK, Trustee of the Via Zopapo Trust UTD 4–1–93, Defendant.

Bankruptcy No. SA 93–13523JW. Adv. No. SA 93–01355JW.

United States Bankruptcy Court, C.D. California.

Feb. 22, 1994.

---

C. Michael Chapman, Newport Beach, CA, for plaintiff.

Paul Reza, Cameron & Dreyfuss, Orange, CA, for defendant.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

### I.

#### Introduction

Cindy Ann MacDonald ("Plaintiff") filed an adversary complaint in which she asserted that the transfer of her residence ("Property") pursuant to a Marshal's Sale upon a state court Writ of Execution and Levy, con-

ducted April 1, 1993, should be avoided under 11 U.S.C. § 548(a)(2)(A)' (1988) of the Bankruptcy Code ("Code").

## II.

### Statement of Facts

On April 5, 1993, the Plaintiff filed a voluntary petition for relief under Chapter 7 of the Code. Upon Plaintiff's Motion to Convert Case, the case was converted to a case under Chapter 11 of the Code by an order entered on May 7, 1993.

On March 21, 1989 a judgment was entered in the amount of $4,507.99 against Plaintiff and her then husband in favor of Mark Kruse ("Judgment Creditor") by the Municipal Court of the State of California. In late 1991, Plaintiff first learned of the outstanding judgment. Plaintiff was not aware that the matter had gone to trial and did not attend or participate in the trial. Plaintiff believed that her former husband had taken care of the matter. After she learned of the judgment she retained the services of Bruce S. Weiner, Esq. ("Weiner") to represent her in connection with satisfying the underlying judgment. Plaintiff instructed Weiner to do whatever was necessary to resolve the matter, including payment of the full judgment if necessary. Weiner failed to take the necessary steps to satisfy the judgment.

Plaintiff acquired the subject Property by a grant deed dated July 8, 1991, which was recorded in the Official Records of Orange County, California on August 8, 1991. Immediately thereafter Plaintiff moved into the property with her three minor children and resided there continuously.

On August 24, 1991, Plaintiff conveyed all of her interest in the Property to Armando J. Saroli and Mary E. Saroli, husband and wife, as community property, by a quitclaim deed dated August 24, 1991, and recorded in the Official Records of Orange County on March 30, 1992. The Sarolis are the Plaintiff's parents.

On March 24, 1992, a Notice of Levy on the Property was recorded in the Official Records of Orange County, California. On September 4, 1992, the Sarolis conveyed all of their interest in the Property to Plaintiff by a grant deed. Only the signature of Mary E. Saroli on the grant deed was notarized. The grant deed was rejected for recording by the Orange County Recorder's Office because Armando J. Saroli's signature was not notarized.

On February 25, 1993, the Sarolis again conveyed all of their interest, if any, in the Property to Plaintiff by a quitclaim deed dated February 25, 1993. The deed was delivered to and accepted by the Plaintiff, but it was not recorded.

Instead of paying the judgement as he had been instructed to do, Plaintiff's attorney brought on a hearing to determine if Plaintiff was entitled to a homestead exemption in the Property. At the February 26, 1993 hearing, the Municipal Court determined that since record title to the Property was not in Plaintiff's name, she was not entitled to a homestead exemption in the property.[1] The Municipal Court ordered a sale of the property.

On March 4, 1993, the Orange County Marshal issued a Notice of Marshal's Sale of the Property. The Marshal's sale was conducted on April 1, 1993. The sale price for the Property at the Marshal's sale was $20,100.00, subject to an existing mortgage with an approximate balance of $161,000.00. Michael Tack, Trustee of the Via Zopapo Trust UTD 4-1-93 ("Defendant"), was the purchaser at the Marshal's sale. Over the last eight (8) years Defendant has purchased fifty (50) to sixty (60) properties at foreclosure and execution sales. In open court, Defendant's counsel euphemistically referred to his client as a "bottom fisher."

*The Marshal's deed conveying the property to the Defendant has not been issued or recorded.* The funds paid by the Defendant for the Property are currently being held by the Orange County Marshal.

---

1. As this issue is not before this Court, this Court does not render an opinion as to whether or not the Municipal Court erred in its decision regarding whether or not Plaintiff was entitled to claim a homestead exemption in the Property.

Plaintiff has alleged numerous defects in the levy, execution and sale process by the underlying Judgment Creditor. The defects included failure to follow proper procedures as well as lack of proper notice of hearings and of the sale itself. The Property was the Plaintiff's primary asset and represented the majority of her net worth. If the transfer is not set aside Plaintiff's debts will exceed her assets.

On May 4, 1993 Plaintiff filed a complaint against Defendant to avoid the transfer of the Property pursuant to 11 U.S.C. § 548(a)(2)(A). Plaintiff contends that the transfer should be avoided because it was made one year before the filing of her bankruptcy petition, she received less than a reasonably equivalent value for the Property and she became insolvent as a result of the transfer. The fair market value of the Property as of April 1, 1993 was between $350,000 and $425,000. Plaintiff's equity in the Property as of April 1, 1993 was between $189,000 and $264,000. Thus, the $20,100 purchase price at the Marshal's sale was between 7.6% and 10.6% of Plaintiff's equity in the Property. On June 4, 1993 the Defendant filed an answer to the Complaint generally denying all of Plaintiff's allegations and asserting that the Defendant was a good faith purchaser, for value.

After a two day trial this matter was taken under advisement to determine whether the transfer of Plaintiff's Property pursuant to a Marshal's Sale upon a state court Writ of Execution and Levy, should be avoided pursuant to 11 U.S.C. § 548(a)(2)(A).

### III.

### Discussion

**a. Whether the Sale of the Property to the Defendant at the Marshal's Sale was a fraudulent transfer under 11 U.S.C. § 548(a)(2)(A)?**

Code § 548 sets forth the avoiding powers of a trustee or debtor-in-possession as they relate to fraudulent transfers of a debtor's interest in property. To avoid a transfer pursuant to Code § 548, four elements must be satisfied:

(1) the debtor must have an interest in the property;

(2) the debtor must have been insolvent at the time of the transfer or become insolvent as a result of the transfer;

(3) the transfer must have occurred within one year of the bankruptcy filing; and

(4) the debtor must have received "less than a reasonably equivalent value" for the transfer.

11 U.S.C. § 548(a)(2)(A) (1988); *See In re Bundles,* 856 F.2d 815, 816–17 (7th Cir.1988); *In re BFP,* 974 F.2d 1144 (9th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1993). Only the third and fourth elements are at issue.

**b. Whether the transfer occurred within one year of the bankruptcy filing?**

■ The filing of a petition under the Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). While Code § 541 defines the scope of the estate's interest in property, this Court must look to state law to determine what legal or equitable interests the debtor had at the commencement of the case. *O'Malley Lumber Co. v. Lockard,* 884 F.2d 1171, 1177 (9th Cir.1989).

The Marshal's Sale was performed pursuant to California Code of Civil Procedure ("C.C.P.") § 701.510 *et seq.* (West 1987 & Supp.1993). C.C.P. § 701.640 provides that a purchaser at an execution sale receives the same interest of the judgment debtor in the property on the effective date of the lien. Cal.Code Civ.Proc. § 701.640 (West 1987).

■ The Notice of Levy was recorded on March 24, 1992. Defendant contends that the Notice of Levy recorded against the Property created a lien against the property which resulted in the Defendant receiving all of the Plaintiff's interest in the property at the time of the lien. Since the effective date of the lien for the judgment creditor was March 24, 1992, the transfer date is March 24, 1992, more than one year prior to the date that Plaintiff filed her petition. Accordingly, Defendant contends the transfer did

not occur within one year of Plaintiff filing her bankruptcy petition.

Code § 101(54) defines transfer to include "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54) (1988). Under this broad definition, there were two distinct transfers during the execution sale process which resulted in a disposition of the Plaintiff's interests in the Property.

The first transfer occurred when the judgment lien attached to the Property; such transfer resulted in the Plaintiff involuntarily "parting with an interest" in property under Code § 101(54). Subsequent to the attachment of the judicial lien, a second transfer occurred when the Property was sold at the execution sale; such transfer being an "involuntary disposal of property" under Code § 101(54).

The creation of a judgment lien against the Property did not result in the Defendant receiving all of the Plaintiff's interest in the property at the time of the lien. C.C.P. § 701.640 merely provides that the purchaser of property at an execution sale acquires any interest of the judgment debtor in the property sold that is held on the effective date of the lien under which the property is sold. Cal.Code Civ. Proc. § 701.640 (West 1987).

At all times up to and including the date of the execution sale, the Plaintiff still retained legal and equitable title to the Property. Thus, since the Plaintiff filed her bankruptcy petition on April 5, 1993 and the execution sale occurred on April 1, 1993, the sale of the Property is subject to avoidance since the sale occurred within one year of the date that Plaintiff filed her bankruptcy petition.

**c. Whether the Plaintiff received "less than a reasonably equivalent value" for the transfer?**

The price received at a noncollusive, regularly conducted foreclosure sale irrebuttably establishes reasonably equivalent value under 11 U.S.C. § 548(a)(2)(A). *In re BFP*, 974 F.2d at 1148; *Accord Durrett v.*

*Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980) (sale cannot be avoided under 11 U.S.C. § 548(a)(2)(A) so long as the debtor received 70% of fair market value); *In re Bundles,* 856 F.2d 815 (7th Cir. 1988) (reasonable equivalence should depend on all facts of each case including fair market value, whether there was a fair appraisal of the property, whether the property was advertised widely and whether competitive bidding was encouraged). As previously noted, a transfer by an execution sale is clearly a transfer for purposes of Code § 548. Therefore, although *BFP* dealt with avoidance of a transfer pursuant to a foreclosure sale, the holding in *BFP* applies to the instant case.

Plaintiff contends that the entire execution, levy and sale process was so defective that the April 1, 1993 sale cannot be deemed to have been a regularly conducted sale. The uncontroverted evidence indicates that there were numerous procedural defects in the writ of execution, levy and sale procedures.

The Notice of Levy was defective in that it indicated that the Plaintiff was being notified of the sale as a person other than the judgment debtor, while in fact she was the judgment debtor. Furthermore, the unrecorded Notice of Levy indicates that it was mailed and posted on April 9, 1992 and the address shown for mailing listed the wrong zip code. Plaintiff claimed she never received notice of the levy. *See* Cal.Code Civ.Proc. § 700.015 (West 1987 & Supp.1993). Numerous other defects occurred including an untimely application for the order for sale, lack of proper service of the Application for Order for Sale of Real Property and OSC, and lack of proper notice of sale. *See* Cal.Code Civ.Proc. §§ 704.740(a), 704.710(a), 704.750(a), 704.-770(b), 704.790 (West 1987 & Supp.1993). Plaintiff contends that the execution sale should be set aside based upon the defects in the sale procedure. In support, Plaintiff cites *In re Worcester,* 811 F.2d 1224 (9th Cir.1987).

In *Worcester* the Court found that an ambiguous description of the subject property resulted in prejudice to the debtor's interests at the foreclosure sale as mandated by California law. Citing *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 323, 211

Cal.Rptr. 582, 589, the Court held that the foreclosure sale should be set aside since under California law, gross inadequacy of price coupled with even a slight unfairness or irregularity is a sufficient basis for setting the sale aside. *Worcester,* 811 F.2d at 1228.

*Worcester* is distinguishable since that case dealt with a defect in a foreclosure sale. The instant case is based upon an execution sale which is governed by C.C.P. § 701.510 *et seq.* C.C.P. § 701.680 provides in pertinent part:

(a) except as provided in paragraph (1) of subdivision (c), a *sale of property pursuant to this article is absolute and may not be set aside for any reason.*

\*     \*     \*     \*     \*     \*

(c) *If the sale was improper* because of irregularities in the proceedings . . .

(1) The judgment debtor . . . may commence an action within 90 days after the date of sale to *set aside the sale if the purchaser at the sale is the judgment creditor* . . .

Cal.Code Civ.Proc. § 701.680 (West 1987 & Supp.1993) (emphasis added). Thus, where a sale is improper the judgment debtor is permitted to bring an action to set aside the sale within ninety (90) days if the property was purchased by the judgment creditor, but not if it was purchased by a third party.

The Judgment Creditor was not the successful bidder at the execution sale; the successful bidder was the Defendant, a third party who made the purchase in good faith and without notice of any defects in the sale procedure. Without evidence that the sale was collusive, the price received from a third party at the execution sale establishes the reasonably equivalent value for the Property under 11 U.S.C. § 548(a)(2)(A). Accordingly, the Plaintiff may not avoid the execution sale under 11 U.S.C. § 548(a)(2)(A).

## IV.

### The Transfer May be Avoided Under 11 U.S.C. § 544(a)(3)

■■ Plaintiff brought this action under section 548 of the Code and did not seek to avoid the transfer under the "strong arm" clause of section 544. Nevertheless, this court cannot ignore clear bankruptcy and California law and validate an otherwise void sale simply because the debtor did not seek relief under the appropriate section of the Bankruptcy Code. Section 544(a)(3) provides:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

"3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, *that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case,* whether or not such not such a purchaser exists." (Emphasis supplied.)

An interest in real property in California is not perfected until the document is recorded with the county recorder. Under California's race-notice recording statute, an unrecorded conveyance of real property is void as against a bona fide purchaser for value whose conveyance is recorded first.

"Perfection of an interest in California real property does not occur until recordation of the document with the county recorder. Under California's race-notice recording statute, an unrecorded conveyance of real property is void as against any bona fide purchaser for value whose conveyance is recorded first. *Cal.Civ.Code* Sections 1213–1215 (West 1982). *See In re Ehring, supra,* 900 F.2d [184] at 188; *In re Chenich,* 100 B.R. 512 (9th Cir. BAP 1987), *app. dism'd,* 883 F.2d 1023 (9th Cir.1989) (holding that a grant deed recorded within 90 days of the perfection is avoidable as a preference because the transfer was not, as a matter of law, perfected at delivery of the deed)." *In re Williams,* 124 B.R. 311, 315 (Bkrtcy.C.D.Cal.1991).

When this bankruptcy case was filed the marshal's execution deed had not been delivered or recorded. Thus, under California law, the transfer to defendant had not been

perfected and may be avoided by the trustee, or in this case, the debtor.

The facts here are similar to those in *In re Walker*, 861 F.2d 597 (9th Cir.1988). In *Walker*, the Ninth Circuit held that a Chapter 13 debtor could set aside a foreclosure sale under Section 549(a) where the sale occurred prior to bankruptcy but the trustee's deed was not recorded when the petition was filed.

The controlling law has been articulated in a well reasoned opinion by bankruptcy judge Lisa Hill Fenning in *In re Williams*, 124 B.R. 311, (Bkrtcy.C.D.Cal.1991). In *Williams* the court held that a pre-petition foreclosure sale was void under section 549 where the deed was recorded after bankruptcy was filed. After finding that the debtor had standing to assert the avoidance powers of the trustee, Judge Fenning correctly ruled that the debtor had the status of a hypothetical bona fide purchaser with a perfected transfer as of the commencement of the case. Thus, under California's race-notice recording statute, the debtor's status-and title-prevailed over the buyer at foreclosure sale. Although *Williams* and *Walker*, and the cases cited therein, involved foreclosure sales, the controlling law applies equally to execution sales, and the debtor is entitled to avoid the sale. See also *In re Duncombe*, 143 B.R. 243 (Bkrtcy.C.D.Cal.1992); *In re Glenwood Associates*, 134 B.R. 1012 (Bkrtcy. D.R.I.1991); *In re Leonard*, 63 B.R. 261 (Bkrtcy.D.Dist.Col.1986).

## V.

### The Appropriate Remedy

■ The defendant "purchased" the property at an execution sale held to satisfy a judgment lien and the marshal continues to hold the purchase price. It would be unjust to punish the defendant who may have been a good faith purchaser but for the avoidance powers conferred by section 544 of the Code. The parties are entitled to be restored to their positions prior to the execution sale. The defendant is entitled to a return of his money with interest at the legal rate together with reasonable attorney's fees and costs. The marshal is ordered to turn over to the defendant the funds held by him and he has an administrative priority claim in an amount to be determined by this court when such a determination is sought by the parties. The judgment lien remains on the property (unless discharged by the Marshall from the sale proceeds), subject to any avoidance powers or exemptions the debtor may assert.

## VII.

### Conclusion

The court's review of applicable law compels the conclusion that while the plaintiff is not permitted to avoid the execution sale of her residence under section 548 of the Bankruptcy Code, the sale is void under section 544 of the Code. This memorandum of decision contains the court's findings of fact and conclusions of law. Counsel for the debtor shall lodge and serve a proposed judgement.